UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ADIAHA A. RUANE,                                           :
                                                           :
                            Plaintiff,                     :
                                                           :       **MEMORANDUM AND ORDER**
            -against-                                      :       17-CV-3704 (PKC)(PK)
                                                           :
BANK OF AMERICA, N.A. and CHEX                             :
SYSTEMS, INC.,                                             :
                                                           :
                            Defendants.                    :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Adiaha A. Ruane brings this action against Defendants Bank of America, N.A. ("BANA" or the "Bank") and Chex Systems, Inc. ("Chex Systems"), alleging violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*; and New York law. (*See* Compl., Dkt. 1.) Plaintiff demands a jury trial. (*Id.*) On November 6, 2017, BANA filed a Motion to Strike Jury Demand (the "Motion"), which was referred to the undersigned. (*See* Mot., Dkt. 14; November 8, 2017 Order.) For the reasons set forth herein, the Motion is denied.

## BACKGROUND

In the Complaint, Plaintiff alleges that on September 27, 2016, an unknown individual deposited five fraudulent checks into her BANA personal checking account. (Compl. ¶ 19.) After Plaintiff reported the unauthorized deposits to BANA, the Bank closed her account, "holding her responsible for the fraud, and reporting her to Chex Systems," a consumer banking reporting agency. (*Id.* ¶¶ 20-23, 46.) Plaintiff asked BANA to re-open her account, but the Bank refused. (*Id.* ¶¶ 24-27.) As a result, Plaintiff could not "receive her widow's pension" and was "unable to cover rent, care for her family, and pay for her transportation to and from work." (*Id.* ¶¶ 27, 41, 64.) She alleges that BANA violated the EFTA, FCRA, and New York law by failing to properly investigate

1

the fraudulent deposits and maintain reasonable fraud prevention procedures. (*Id.* at 15-23.) The Complaint also includes Plaintiff's demand for a jury trial. (*Id.* at 24.)

On this Motion, BANA argues that Plaintiff was repeatedly notified of the jury waiver provision, located in a deposit agreement, throughout her relationship with the Bank: when BANA sent a letter enclosing the deposit agreement to all new customers it acquired from Fleet National Bank; when Plaintiff executed a signature card that referenced the terms and conditions governing her account; and when BANA sent Plaintiff monthly account statements that referenced the existence of the deposit agreement.

On May 10, 2005, BANA sent a letter to clients of Fleet National Bank ("Fleet") whose accounts were to be acquired by BANA in June 2005. (BANA Mem. at 1-2, Dkt. 16; Jordan Aff. ¶ 6, Dkt. 15; Jordan Aff. Ex. B, Dkt. 15-2.) The Fleet letter discussed BANA's acquisition of the Fleet accounts, noting that either BANA or their clients "may elect to resolve disputes without a jury trial," and attached a copy of a document entitled "Deposit Agreement and Disclosures" ("Deposit Agreement" or the "Agreement"). (Jordan Aff. Ex. B, Dkt. 15-2 at 5, 7.) The Deposit Agreement, effective July 22, 2005, includes the relevant jury waiver provision. (*See* Jordan Aff. ¶¶ 6-8.)

Plaintiff executed a signature card (the "Signature Card") when she opened her checking account on May 31, 2005. (Jordan Aff. Ex. A, Dkt. 15-1; BANA Mem. at 1.) The Signature Card itself does not address any means of dispute resolution, but pursuant to the Signature Card, Plaintiff agreed "to be bound by the terms and conditions governing the deposit accounts and services . . . for which I have applied." (*See* Jordan Aff. ¶ 5; Jordan Aff. Ex. A.) The Signature Card does not reference the Deposit Agreement by name or date, and the record contains multiple versions of the Deposit Agreement with different effective dates. (*See* Jordan Reply Aff. Ex. B, Dkts. 24-3–24-6.) The earliest version of the Deposit Agreement in the record lists an effective date of July 22, 2005— roughly two months after Plaintiff executed the Signature Card. (*See* Jordan Aff. Ex. B, Dkt. 15-2 at

2

7; Jordan Reply Aff. Ex. B.) There is no Deposit Agreement in the record with an effective date on or prior to May 31, 2005.

The July 22, 2005 Deposit Agreement provides that in any controversy pertaining to the account relationship that is to be "decided by arbitration, by judicial reference, or by trial by a judge," the accountholder and BANA "are giving up the right to trial by jury, and there will be no jury . . . ." (Jordan Aff. Ex. B, Dkt. 15-2 at 10.) It further provides that any controversy concerning the "deposit account relationship with [BANA] that is not submitted to arbitration . . . will be determined by reference to a referee appointed by the court who, sitting alone and without a jury, will decide all questions of law and fact." (*Id.*)

From August 2005 to October 2016, BANA sent Plaintiff monthly account statements referencing the Deposit Agreement. (Jordan Reply Aff. ¶ 8, Dkt. 24-1; BANA Reply Mem. at 2-3, Dkt. 24.) The monthly account statements include a section called "Important Information for Bank Deposit Accounts" which informs the accountholder that when she opened the account, she

> received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule, which contain the current version of the terms and conditions of your account relationship, may be obtained at our banking centers.

(Jordan Reply Aff. Ex. D, Dkt. 24-8 at 12.) BANA has submitted Plaintiff's August 15, 2005 monthly account statement and copies of the Deposit Agreement with effective dates up to April 7, 2017, even beyond the date on which BANA closed Plaintiff's account in October 2016. (Jordan Reply Aff. Ex. D; Jordan Aff. Ex. C, Dkt. 15-3 at 2; Ruane Opp'n Decl. ¶¶ 12-13, Dkt. 22-1.)

The undersigned heard argument on the Motion on January 9, 2018. (*See* January 9, 2018 Mins., Dkt. 28; January 9, 2018 Hr'g Tr., Dkt. 29.) At the hearing, BANA conceded that Plaintiff was not a Fleet customer and thus would not have received a copy of the May 10, 2005 letter.

3

(January 9, 2018 Hr'g Tr. at 17, 19-20; Ruane Opp'n Decl. ¶¶ 4, 10.)  BANA also acknowledged that the Signature Card does not reference the Deposit Agreement by name and that there are no documents confirming either that Plaintiff was given a copy of the Deposit Agreement or that, as a matter of practice, new customers were given the Deposit Agreement when opening BANA accounts in 2005.  (January 9, 2018 Hr'g Tr. at 22, 24-25, 39-40, 42.)  Nonetheless, BANA asked the Court to infer that Plaintiff received the Deposit Agreement when she opened her account, based on the Bank's practice of notifying accountholders via their monthly account statements that the Deposit Agreement is available at the bank.  (*Id.* at 42-43.)  BANA reasoned that it was "legally incumbent on the customer" to obtain a copy of the Deposit Agreement, available online or at bank locations, and review its terms, thereby discovering the jury waiver.  (*Id.* at 23, 31.)  Counsel for BANA could not confirm the number of pages in each version of the Deposit Agreement, whether each version was complete, or the particular page on which the jury waiver was located, but noted that a client could simply follow the table of contents to the section entitled "Resolving Disputes" rather than read an entire Deposit Agreement.  (*Id.* at 33-38.)

## DISCUSSION

The right to a jury trial, afforded by the Seventh Amendment, "can only be relinquished knowingly and intentionally."  *Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 910 (S.D.N.Y. 1995) (citation omitted).  A party seeking to strike a jury demand bears the burden of proof to overcome the presumption against the waiver of this "fundamental" right.  *Id.*  In deciding motions to strike, courts evaluate the "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision."  *Id.* at 911 (collecting cases).  BANA offers a twofold argument—first, that Plaintiff consented to the waiver when she opened her account, and second, that she was on

4

notice of the Deposit Agreement over the course of the eleven years she maintained her account with the Bank.

As an initial matter, BANA's argument that Plaintiff consented to the jury waiver by executing the Signature Card rests on the premise that Plaintiff received a copy, or was at least made aware of, the Deposit Agreement at that time. BANA asserts that "by <u>knowingly and voluntarily</u> signing the Signature Card, Plaintiff agreed to be bound by the terms and conditions of the Deposit Agreement." (BANA Mem. at 4 (emphasis in original).) The record does not support this. While it is true that the Signature Card memorialized Plaintiff's consent "to be bound by the terms and conditions" governing her account, the Deposit Agreement is not mentioned by name. (Jordan Aff. Ex. A.) The plain text of the Signature Card, which is actually entitled "Customer Agreements for [Plaintiff]" and enumerates specific terms and conditions in a section called "Agreements," does not state that any additional terms are set forth elsewhere. (*Id.*) Plaintiff does not refute that she knowingly and voluntarily signed the Signature Card; she refutes that she knowingly and voluntarily consented to a jury waiver contained in a separate document that is not incorporated by reference into the Signature Card. The Signature Card itself does not establish that Plaintiff consented to the terms of the Deposit Agreement, and as BANA concedes, there is neither direct documentation nor evidence of a general practice at the Bank suggesting that Plaintiff was given a copy of the Deposit Agreement when she executed the Signature Card. (January 9, 2018 Hr'g Tr. at 39-40.)

In addition, BANA fails to establish that the Deposit Agreement in effect when Plaintiff executed the Signature Card on May 31, 2005 even included a jury waiver provision. The earliest version of the Deposit Agreement in the record has an effective date of July 22, 2005, almost two months *after* Plaintiff opened her BANA account. (*See* Jordan Aff. Ex. B; Jordan Reply Aff. Ex. B.) While BANA affirms that the jury waiver provision has appeared in different versions of the Deposit Agreement "since 2005," it does not provide the version that the Signature Card would

5

have covered. (Jordan Reply Aff. ¶ 7.) There is no evidence that the Deposit Agreement in effect when Plaintiff opened her account included a jury waiver provision.

The Court cannot conclude that each version of the Deposit Agreement, including the version in effect in May 2005, contained the same jury waiver language. Although BANA affirms that the copies in the record comprise "all versions" in effect during the period that Plaintiff had an account with BANA, no version covers the gap between the time Plaintiff opened her account in May 2005 and July 22, 2005. (Jordan Reply Aff. ¶ 6.)

BANA also argues that Plaintiff could have obtained a copy of the Deposit Agreement by following the instructions in her monthly account statements; therefore, she was "on notice" of the Deposit Agreement and, by extension, governing terms such as the jury waiver. (January 9, 2018 Hr'g Tr. at 40-41, 43; BANA Reply Mem. at 2-3.) The monthly account statement itself does not contain a jury waiver or reference dispute resolution. A copy of the Deposit Agreement is not included with the monthly statement. Instead, the statement merely notes, in fine print on what appears to be the last page, that an Agreement exists, may be amended "from time to time" and "may be obtained at our banking centers." (*See* Jordan Reply Aff. Ex. D, Dkt. 24-8 at 12, 21.) Several monthly account statements from 2013 and 2016 remedy this issue to some extent, moving the notice up to the second page, in larger, red print. (*Id.* at 23, 31; *see also* January 9, 2018 Hr'g Tr. at 47-48.) However, despite the numerous changes to the Deposit Agreement apparent from the exhibits, there is no indication that BANA disclosed specific revisions to accountholders in the monthly account statement or its attachments. If the Deposit Agreement in effect on May 31, 2005 did not contain a jury waiver, monthly account statements like those in the record would not have notified Plaintiff of a substantive change of terms such as the addition of a waiver provision.

Even if Plaintiff had received a Deposit Agreement containing a jury waiver, BANA does not overcome the presumption against waiver as a matter of law. As discussed above, the Court

6

must consider the "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision." *Sullivan*, 881 F. Supp. at 911. Where a plaintiff signs a non-negotiable contract with "standardized language . . . drafted by the defendant," this "inequality in relative bargaining positions suggests that the asserted waiver was neither knowing nor intentional." *Id.* (no waiver of jury trial based on non-negotiable provision in cruise ship ticket). The disparity in bargaining power between Plaintiff, an individual described as lacking any "business or negotiation experience" (Ruane Opp'n Decl. ¶ 7), and Defendant BANA, a major bank, is apparent. *Cf. Orix Credit All., Inc. v. Better Built Corp.*, No. 89-CV-7333 (JFK), 1990 WL 96992, at *2 (S.D.N.Y. July 2, 1990) (waiver found where "both sides include corporations" and "neither should be a stranger to contract negotiations").

Furthermore, the jury waiver provision is "set deeply and inconspicuously in the contract," appearing to fall at the end of each version of the Deposit Agreement. *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (no waiver where "provision literally buried in the eleventh paragraph of a fine print, sixteen clause agreement"); *cf. Orix Credit All., Inc.*, 1990 WL 96992, at *2 (waiver was conspicuous where "entire agreement was only one-half page in length with the waiver appearing only three lines above the defendant's signature"). Not only is the jury waiver buried toward the back of the document, the location and context of the waiver language changed over time. In the July 2005 version, the jury waiver is found in the "Resolving Disputes" section, on page 80 of the Deposit Agreement. In the December 2005, June 2006, and July 2007 versions, the jury waiver shifts to page 35. (*See* Jordan Reply Aff. Ex. B, Dkt. 24-3 at 73, 94; *id.*, Dkt. 24-4 at 21, 42.) Versions of the Deposit Agreement effective February 2008, June 2008, and November 2008 include a section called "Trial by a Judge Without a Jury" on page 41, which is also listed on the table of contents. (*See id.*, Dkt. 24-4 at 45, 66, 68, 89, 91, 112.) Despite its title, the language of this

7

section does not support a mandatory waiver, stating that "[a] Claim that is not submitted to arbitration or judicial reference will be decided by a judge without a jury as permitted by law," in contrast to a provision earlier in the Agreement stating that the parties "are giving up the right to trial by jury." (*Id.*, Dkt. 24-4 at 88-89.) December 2005, July 2006, and June 2007 versions include this section but do not list it on the table of contents. (*Id.*, Dkt. 24-3 at 76, 94; *id.*, Dkt. 24-4 at 3, 21, 24, 42.) Only one version of the Deposit Agreement references the term "jury waiver" on the table of contents—the October 2009 version, which lists a section called "Class Action and Jury Trial Waiver." (*Id.*, Dkt. 24-4 at 114, 136.) Subsequent versions of the Deposit Agreement no longer include that section heading in either the Agreement or the table of contents. Instead, they contain jury waiver language under a section with the more general heading "How Claims on Personal Accounts will be Resolved." (*See id.*, Dkt. 24-5 at 4, 51, 76, 101, 126; *id.*, Dkt. 24-6 at 3, 30, 57; *id.*, Dkt. 15-3 at 4.) A purported waiver such as this, buried at the end of a Deposit Agreement whose exact length and various incarnations remain unconfirmed, is certainly not conspicuous. The Bank did not make it any easier to find or keep track of the jury waiver language. There is no evidence that Plaintiff was specifically notified of what changes were or were not made to the jury waiver provision. The Bank did not send the updated versions of the Agreement with the monthly account statement, instead requiring a customer to seek out a copy of the Agreement and then search through it.

Defendant BANA has failed to meet its burden of proof to overcome the presumption against waiver.

## CONCLUSION

Based on the foregoing, the Motion to Strike Jury Demand is denied.

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
April 11, 2018