

Via ECF　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　August 20, 2018
The Honorable Pamela K. Chen
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East, Brooklyn, New York 11201

Re:　*Ruane v. Bank of America, N.A. et al.*; Case No. 1:17-CV-03704 (PKC) (PK)
　　　**Plaintiff's Opposition to Defendant Early Warning Services, LLC (EWS)'s
　　　Request for Pre-Motion Conference**

Dear Judge Chen:

The undersigned, along with Bromberg Law Office, P.C., represents Plaintiff, Adiaha A. Ruane, in this action. Plaintiff opposes Defendant EWS's request for a pre-motion conference to move to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has stated plausible claims for relief against EWS and has set forth sufficient factual allegations to support such claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A motion to dismiss is premature at this stage as Plaintiff has not had an opportunity to conduct any discovery with EWS regarding her claims.[1] Litigating a motion to dismiss at this juncture will cause the unnecessary accrual of fees and costs, and waste judicial resources.

Plaintiff's chief claims against EWS, a consumer reporting agency (CRA), arise from its failure to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in Plaintiff's EWS report. *See* Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b); N.Y. Fair Credit Reporting Act ("NY FCRA"), N.Y. G.B.L. § 380-j(e); California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.14(b); Plaintiff's Amended Complaint (ECF 42) ("Am. Compl.") ¶¶ 163, 215, 219(b), 223(a).

To maintain such a cause of action, "plaintiff must show that: (1) the CRA negligently or willfully failed to follow reasonable procedures to insure the accuracy of the credit report; (2) the information was inaccurate; (3) there was an injury; and (4) the injury was a result of a failure to follow reasonable procedures." *Okocha v. Trans Union, LLC*, 2011 U.S. Dist. 39998, at *15 (E.D.N.Y. March 31, 2011) (internal citations omitted). Plaintiff has set forth sufficient factual allegations to support each of these four prongs, and the Court must accept such allegations as true in evaluating a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (internal citations omitted).

In September 2016, Plaintiff discovered that five fake checks, all bearing a facsimile signature of President Barack Obama, had been deposited into her into her Bank of America, N.A. ("BANA")

---

[1] Plaintiff is on the verge of filing a discovery letter motion with M.J. Kuo concerning Bank of America, N.A.'s failure to turn over responsive information including documents and communications between BANA and EWS.

personal checking account without her knowledge or consent. (Am. Compl. ¶¶ 27-31, 78, 87.) A longtime customer, she immediately reported the unauthorized deposits to BANA, before any of the funds were withdrawn. (*Id.* ¶¶ 30, 64, 111, 114.) Soon after, BANA told Plaintiff that it was nonetheless closing her account and holding her responsible for the fraud. (*Id.* ¶ 32.) BANA also reported Plaintiff to Chex Systems, Inc. ("Chex") for "suspected fraud activity" and to EWS for "[t]ransacting (or attempting to transact) with an account in an unauthorized or prohibited manner" (*id.* ¶ 71), thereby blocking her from opening a bank account elsewhere. (*Id.* ¶¶ 53, 72.)

As Plaintiff thoroughly alleges in her Amended Complaint, she did not deposit the fraudulent checks or otherwise transact or attempt to transact with her BANA account "in an unauthorized or prohibited manner," and the information BANA furnished to EWS was therefore inaccurate. (*See id.* ¶¶ 2-3, 29, 31-32, 78, 81, 87, 91, 93, 137.) *See Dalton v. Capital Associated Indus.*, 257 F.3d 409, 415 (4th Cir. 2001) ("A report is inaccurate when it is patently incorrect or when it is misleading in such a way ... that it can be expected to have an adverse effect") (internal citations and quotations omitted). EWS's assertion that it "accurately reported exactly what BANA had done and what BANA had reported to EWS" (ECF 61) does not make the reported information "accurate" or otherwise establish that EWS complied with the FCRA. *See Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982) ("[CRA] does not *necessarily* comply ... by simply reporting in an accurate manner the information it receives from creditors"); *O'Brien v. Equifax Info. Serv., L.L.C.*, 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005) (declining to find that a CRA's procedures are reasonable as a matter of law whenever it simply repeats information from a reputable source). Plaintiff also clearly alleges that she was injured and that her injury was a result of EWS's failure to follow reasonable procedures (*see* Am Compl. ¶¶ 20, 53-63, 71-72); though these latter two allegations are not directly addressed in EWS's pending letter motion (*see* ECF 61).

In addition to pleading sufficient facts to support her claims under prongs (2), (3), and (4), *see Okocha*, at *15, Plaintiff has also satisfied the pleading standard for the first prong, by alleging concrete facts to establish that EWS failed to keep and follow reasonable procedures to insure the maximum possible accuracy of her report. (*See* Am. Compl. ¶¶ 163-171.) Documents EWS received from BANA could not have supported its negative reporting as Plaintiff did not transact improperly with her account[2] (*see id.* ¶ 166), and EWS is therefore incorrect that Plaintiff fails to show that it "should have doubted the reliability of BANA's reporting" (ECF 61). Indeed, based on the information BANA furnished, EWS knew or should have known BANA's reporting was inaccurate, incomplete, or could not be verified (*id.* ¶¶ 165); there were a myriad of indicators of fraud, (*see id.* ¶¶ 45-48, 78, 87), yet nothing to indicate that Plaintiff was involved in the fraud. EWS's procedures are not reasonable merely because it parroted the information furnished by BANA. *See O'Brien*, 382 F. Supp. at 739. A jury could reasonably find that EWS did not follow or maintain reasonable procedures to vet and distribute BANA's negative reporting of Plaintiff.

Plus, the fact that BANA partially owns EWS (*see* Am. Compl. ¶ 18) suggests EWS was privy to even more information about the reliability of the data furnished by BANA, beyond what may be typically available to CRAs. For example, Plaintiff alleges that "BANA was on notice of at least one other case" with remarkably similar facts in which checks bearing a fake Obama signature were deposited into a BANA customer's account and that customer sued BANA for holding him liable for the fraud. (*Id.* ¶ 99). Plaintiff also alleges that "BANA routinely closes the accounts of customers with low account balances and reports those customers ... as having ... engaged in

---

[2] The approximately 1164 pages of discovery produced to date by BANA do not provide evidence to the contrary.

unauthorized activity … though BANA has not properly investigated those customers' disputes or fraud claims and … does not have a reasonable basis" for such conclusions. (*Id.* ¶ 124). Thus, given BANA's partial ownership of EWS, Plaintiff should at least have an opportunity to engage in discovery concerning the nature of their relationship, before defending a motion to dismiss by EWS. Discovery regarding their legal and financial relationship, as well as BANA's process for transferring or uploading derogatory information to EWS, and EWS's process for vetting such information, is needed to evaluate whether information available to BANA is imputable to EWS.

Along the same lines, without discovery, it is virtually impossible to evaluate the reasonableness of EWS's procedures, much less whether EWS followed such procedures when it received and reported the information from BANA. Evaluating the reasonableness of a CRA's procedures generally involves weighing the potential harm from the inaccuracy against the burden of safeguarding against such inaccuracy. *See Houston v. TRW Info. Services*, 707 F. Supp. 689, 693 (S.D.N.Y. 1989) (internal citation omitted). Without knowing what procedures were in place and whether they were followed by EWS, the burden of safeguarding against the alleged inaccuracy cannot possibly be assessed. Whether a credit reporting agency followed reasonable procedures is generally a question for the jury. *Gorman v. Experian Info. Solutions, Inc.*, 2008 U.S. Dist. LEXIS 94083, at *13 (S.D.N.Y. November 19, 2008) (internal citation and quotations omitted).

EWS also attempts to avoid liability by claiming that it deleted the negative information after it was disputed by Plaintiff. (*See* ECF 61.) This is beside the point. Plaintiff's claims against EWS arise from its initial reporting of negative information, not its failure to reinvestigate. Moreover, based on the documents currently available to Plaintiff, it is not even apparent whether EWS removed the negative information because it was "incomplete, inaccurate, or … [could] not be verified" (as represented by EWS) *or* if the information was temporarily and conditionally removed, pending the conclusion of this case (as represented by BANA). (*See* Am. Compl. ¶¶ 88, 89.) Without discovery, Plaintiff will be left not knowing the actual status of her dispute.

All of the cases cited in EWS's August 13, 2018 letter involve motions for summary judgment that were made after some discovery. In this case, Plaintiff has not exchanged discovery with EWS, as the Protective Order was just extended to EWS on August 14, 2018. On July 26, 2018, Plaintiff's counsel requested "informal discovery concerning what was reported by [BANA], what investigation took place by EWS, and what the current status is, as well as copies of any communications or documents regarding Ms. Ruane." However, EWS has not yet responded.

Plaintiff has also stated a viable defamation claim under New York common law and California Civil Code §§ 44 and 45a, by pleading facts to support a finding of malice by EWS, including that EWS: deliberately and willfully failed to maintain reasonable procedures (*id.* ¶ 163); "knew or should have known" the information was inaccurate (*id.* ¶ 165); "is aware that virtually all banks … reject a person's application" if it is reported they transacted in a "prohibited manner" (*id.* ¶ 167); knew its reporting "would severely impair, if not extinguish, [Plaintiff's] ability to open an account" and "intended for its reporting to have such an effect" (*id.* ¶¶ 168-169); and "acted with malice and with the intent to injure" Plaintiff (*id.* ¶ 238). And, BANA's ownership of EWS raises real questions about the imputation of BANA's malicious intent (*id.* ¶ 141) to EWS.

Respectfully submitted,
/s/ Eve Weissman
Eve Weissman                                                cc: All counsel of record (via ECF)