```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
ADIAHA A. RUANE,                                                         :
                                                                         :  Index No.: 17-CV-3704
                                              Plaintiff,                 :  (PKC) (PK)
                                                                         :
         – against –                                                     :
                                                                         :
BANK OF AMERICA, N.A., CHEX SYSTEMS, INC.,                               :
and EARLY WARNING SERVICES, LLC,                                         :
                                                                         :
                                              Defendants.                :
------------------------------------------------------------------------ X
```

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
BANK OF AMERICA, N.A.'S RENEWED MOTION TO COMPEL DISCOVERY**

Plaintiff, Adiaha A. Ruane ("Ms. Ruane"), respectfully submits this memorandum of law in opposition to Defendant Bank of America, N.A. ("BANA")'s renewed motion to compel ("Renewed Motion") the production of highly sensitive personal information consisting of her tax returns, banks, and internet and telephone service providers. BANA relies principally on the same arguments previously presented to and rejected by the Court. For the reasons below, BANA is not entitled to the discovery it seeks. Ms. Ruane respectfully requests that the Court uphold its July 20, 2018 order and deny the Renewed Motion.

**I.     BACKGROUND**

In September 2016, when Ms. Ruane discovered that five fake checks had been deposited into her BANA checking account, she immediately reported the fraud to BANA, *before any funds were withdrawn*. Plaintiff's Amended Complaint (ECF 42) ("Am. Compl.") ¶¶ 27-28, 30, 64, 111, 114. BANA then told Ms. Ruane it was closing her account and holding her responsible for the fraud. *Id.* ¶ 32. BANA reported her to Defendant Chex Systems, Inc. ("Chex") for "suspected fraud activity" and Defendant Early Warning Services, LLC ("EWS") for "[t]ransacting (or attempting to transact) … in an unauthorized or prohibited manner," blocking

her from opening a bank account elsewhere and ultimately upending her life. *Id.* ¶¶ 20, 53, 59, 60 63, 71-72, 78, 159.

In June 2017, Ms. Ruane brought the instant case alleging, *inter alia*, that BANA violated the Electronic Fund Transfer Act (EFTA), the Fair Credit Reporting Act (FCRA), and state law by failing to conduct good-faith and reasonable investigations of the fraud. BANA filed a discovery letter motion (ECF 45) ("Letter Motion") seeking production of seven years' worth of Ms. Ruane's tax returns, banks, and internet and telephone providers. The Court denied BANA's Letter Motion on July 20, 2018, with leave to renew by filing a fully briefed motion. Though BANA reduced the time frame of its requests, the requested discovery is still neither "relevant to any party's claim or defense" nor "proportional to the needs of the case" under FRCP 26(b)(1).[1]

## II.  LEGAL ARGUMENT

"Discovery … is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Tottenham v. Trans World Gaming Corp.*, 2002 U.S. Dist. LEXIS 11313, at *3 (S.D.N.Y. June 21, 2002) (citing *Cleveland-Goins v. City of New York,* 1999 U.S. Dist. LEXIS 13255, at *6-7 (S.D.N.Y. Aug. 30, 1999) (internal quotations omitted). Contrary to BANA's claim that "fishing expedition" is not a proper ground to constrain discovery (Renewed Motion ¶ 24), courts routinely employ this concept to circumscribe discovery that is unreasonable in scope and based on "pure speculation or conjecture." *Id.* at *4 (citing *Surles v. Air France*, 2001 U.S. Dist. LEXIS 10048, at *11 (S.D.N.Y. July 19, 2001)); *AstraZeneca AB v. Dr. Reddy's Labs., Ltd.*, 2010 U.S. Dist. LEXIS 32883, at *19 (S.D.N.Y. March 30, 2010); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 583-84 (S.D.N.Y. 2006); *see also CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1649 (2016); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

---

[1] BANA also continues to cite obsolete language concerning the scope of FRCP 26(b)(1) as "reasonably calculated to lead to the discovery of admissible evidence," *see* Renewed Motion ¶¶ 15-16, though this language was deleted from FRCP 26 when it was amended in 2015.

BANA attempts to justify discovery of highly sensitive information mainly by claiming that the information is necessary to show Ms. Ruane was complicit in the fraud, *though she herself reported the unauthorized deposits to BANA and BANA suffered no loss*. *See* Renewed Motion ¶¶ 8, 20; Letter Motion; January 9, 2018 Transcript ("Transcript") (**Ex. A**) pp. 7, 12. BANA claims, with no factual support, that Ms. Ruane was complicit in the fraud simply because she had "financial imperatives" and is a person of "modest means." Renewed Motion ¶ 13; Transcript p. 12. BANA also claims, with no factual support, that this discovery is necessary to establish Ms. Ruane's "*modus operandi*" and involvement in other scams, ignoring—and failing to mention—the fact that she reported the fraud before any funds were withdrawn (refuting BANA's claim that she committed the fraud out of "financial imperatives") and disregarding the incongruity between painting her as some sort of seasoned criminal and BANA's insistence that Ms. Ruane was targeted by scammers precisely because she is a person of "modest means" (it is difficult to understand why a seasoned criminal would have reported the fraud to the bank before any funds were withdrawn). *See* Renewed Motion ¶ 25; Transcript p. 12.

Taken to its logical conclusion, BANA's argument is that whenever fraud is committed on a low-income customer's account, BANA may negatively report that customer to consumer reporting agencies (CRAs) such as Chex and EWS, and if challenged in court, BANA is entitled to discovery of highly sensitive personal information concerning her communications and finances, simply by arguing that the customer is low-income. Permitting discovery of highly sensitive information based on these facts alone would discourage low-income people from asserting their legal rights against BANA and other banks, and essentially create a two-tiered discovery process in such cases—one for low-income plaintiffs and one for everyone else.

Remarkably, while claiming Ms. Ruane committed the fraud *because* she is low-income, BANA also argues it is entitled to this discovery so it can determine whether she had undisclosed income, employment, assets, funds, and investments, and is lying about the economic hardship

she endured as a result of BANA's actions. Renewed Motion ¶ 25-26. However, "courts within the Second Circuit have found personal financial information to be presumptively confidential" and motions to compel discovery of such information should be denied where it is "available from other less intrusive sources" such as "an affidavit of net worth, wealth, and income" or by deposition. *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 331-332 (N.D.N.Y 2006) (internal citations omitted).

### A. BANA's barebones, conclusory affirmative defenses do not warrant this discovery.

As this Court already found, BANA's unfounded affirmative defenses (Renewed Motion ¶¶ 8, 11-12) do not permit the discovery it seeks. BANA insists there are "many factors" beyond "financial imperatives" to suggest Ms. Ruane was involved in the fraud (Renewed Motion ¶ 13), but refuses to name a single one.[2] BANA may not go on a fishing expedition for evidence Ms. Ruane was complicit without any colorable facts to support this claim. *See Tottenham*, 2002 U.S. Dist. LEXIS 11313, at *4 ("requests constitute no more than a fishing expedition to discover ... instances of wrongdoing"). For this same reason, BANA's contention that it is entitled to the requested discovery simply because Ms. Ruane denies involvement in the fraud must also fail.

BANA's reliance on its unjust enrichment defense (Renewed Motion ¶ 11) is particularly bizarre, as there is no indication that Ms. Ruane realized any financial gain as a result of the fraud. Am. Compl. ¶ 30, 110. BANA's assertion that it is entitled to this discovery because truth is an absolute defense to defamation (Renewed Motion ¶¶ 6-7) is also incorrect. Besides its failure to present any facts suggesting Ms. Ruane was complicit, BANA's reporting to the CRAs *was* false: BANA reported her to Chex for "suspected fraud activity" – which Chex defines as activity where someone "obtain[ed] unauthorized benefits or rights" as a result of the fraud. CHEX00012 (**Ex. B**). It is undisputed, however, that no money was withdrawn; nor has BANA

---

[2] No longer relying on a confidential ex-parte settlement statement that BANA claims contains "detailed facts" supporting its position that Ms. Ruane was complicit in the fraud (*see* Letter Motion – ECF 45), BANA's pending motion rests on even flimsier ground than its earlier motion already heard and denied by the Court.

Page **4** of **11**

even argued that Ms. Ruane benefited from the fraud. BANA also reported her to EWS for "[t]ransacting (or attempting to transact) … in an unauthorized or prohibited manner," though BANA acknowledges that the deposits were made *not* by Ms. Ruane, but by a third party. Renewed Motion ¶ 20.

### B. BANA's remaining arguments for this discovery are similarly unpersuasive.

BANA erroneously contends that by bringing a lawsuit Ms. Ruane "puts her character and credibility in issue" and waives "[a]ny aspects of privacy." Renewed Motion ¶¶ 10, 25. However, "[e]vidence of character in a civil action is generally not admissible when offered as a basis for inferring conduct." *See Doe v. Handman*, 2000 U.S. Dist. LEXIS 12940, at *10 (S.D.N.Y. Sept. 7, 2000) (internal quotations and citations omitted); *Nakasian v. Incontrade, Inc.*, 78 F.R.D. 229, 231 (S.D.N.Y. 1978) (citing Fisch, *New York Evidence* § 173 (2d ed. 1977)); Federal Rule of Evidence 404(a)(1). Nor does BANA offer legal support for its claim that one waives all privacy rights by bringing a lawsuit; indeed, the cases cited below show otherwise.

BANA's argument that Ms. Ruane waived her objections by not providing a privilege log (Renewed Motion ¶ 22) also does not hold water. The purpose of a privilege log is to disclose the type of document, subject matter, date and author. Local Civil Rule 26.2. A privilege log is superfluous here, as BANA knows Ms. Ruane's tax returns are indeed tax returns, etc. Nor does BANA's argument that discovery is needed to retrospectively confirm or validate its conclusion that Ms. Ruane was complicit (Renewed Motion ¶ 10) warrant any further consideration. Ms. Ruane's claims concern whether BANA previously conducted good-faith and reasonable investigations regarding her disputes, and do not call for such a backward-looking analysis.

### C. BANA is not entitled to five years' worth of Plaintiff's tax returns.

Since 1977, tax returns have been described as "confidential" by statute, thus codifying the privacy interests of taxpayers, *see Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 71 (D. Conn. 2001), and "the need … to encourage taxpayers to file complete and accurate

returns." *Gates v. Wilkinson*, 2005 U.S. Dist. LEXIS 5523, at *4 (N.D.N.Y. Apr. 5, 2005) (internal quotations and citations omitted). Accordingly, a more stringent standard for discovery of tax returns applies than FRCP 26(b)(1)'s general relevance and proportionality standards. "[T]ax returns need not be disclosed unless: (1) it clearly appears that they are relevant … and (2) there is a compelling need for their disclosure because the information contained in the tax returns is not otherwise readily obtainable." *Bujnicki v. Am. Paving & Excavating, Inc.*, 2004 U.S. Dist. LEXIS 8869, at *41 (W.D.N.Y. Feb. 25, 2004) (internal citations omitted).

Indeed, while claiming that "[t]here is no recognized privilege … for tax returns" (Renewed Motion ¶ 13), BANA cites cases holding that tax returns *are* subject to "qualified privilege" and that courts should be cautious in ordering their disclosure. *See*, *e.g.*, *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (S.D.N.Y. 1988); *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985); *Mitsui & Co. v. Puerto Rico Water Resources Authority,* 79 F.R.D. 72, 80 (D.P.R. 1978). In these cases, tax returns were found relevant to questions squarely before the court. *See Cymaticolor*, 106 F.R.D. at 547-49 (relevant to whether profit made from sale of stock and to loans made to third parties to finance the purchase of stock); *Bonanno*, 119 F.R.D. at 627-28 (relevant to source of income and nature of business dealings). Moreover, the cases BANA relies on involve organized crime and insider trading, whereas the instant case involves a widow with two children whose meager paychecks are supplemented by a widow's pension. BANA fails to explain how Ms. Ruane's tax returns are relevant to this case, which is primarily about whether BANA conducted good-faith and reasonable investigations under the EFTA and FCRA. Am. Compl. ¶¶ 91-117, 127-130, 137, 174, 183, 210. BANA's claim that Ms. Ruane's returns will show "the nature of her business contacts with the third party making the fraudulent deposits to her account" (Renewed Motion ¶ 19) is mere speculation. *Compare with, Cymaticolor*, 106 F.R.D. at 549 ("certainly not mere speculation … that the returns may contain [relevant] information"). BANA produces no

evidence to support this claim, nor does it show that such information even exists, much less that it might be contained in Ms. Ruane's tax returns.

Alternatively, BANA argues Ms. Ruane's tax returns are discoverable because she has placed her income in issue by claiming she lost income and was unable to open a bank account and support her family as a result of BANA's actions. Renewed Motion ¶¶ 18-19. But where information purportedly contained in tax returns is available from "less intrusive" sources, such as depositions, compelled production should be denied. *Sadofsky v. Fiesta Prods., LLC*, 2008 U.S. Dist. LEXIS 60214, at *23 (E.D.N.Y. Aug. 6, 2008) (information available from sales invoices); *Bujnicki*, 2004 U.S. Dist. LEXIS 8869, at *42 (information available from W-2s and wage statements); *Hazeldine v. Beverage Media*, 1997 U.S. Dist. LEXIS 8971, at *12 (S.D.N.Y. June 27, 1997) (compelling "a financial affidavit in the form of a personal balance sheet" instead of tax returns); *Robinson v. Horizon Blue Cross-Blue Shield,* 2013 U.S. Dist. LEXIS 180325, at *15 (D.N.J. Dec 23, 2013) ("[i]nterrogatories narrowly direct[ed] at ascertaining … net worth" less intrusive); *Gattegno*, 205 F.R.D. at 73-74 (information available in W-2s and 1099 forms).

Ms. Ruane can attest in a deposition to her loss of income and her inability to open another bank account and support her family. She has already produced paystubs from FedEx, her prior employer, and National Grid, her current employer; a resume showing she stopped working at FedEx in December 2016; a job application and National Grid letters showing she was applying for jobs in New York; communications from Ireland's Social Welfare Services Office showing accrual of pension arrears in the months after BANA closed her bank account, preventing her from receiving her Irish widow's pension; and pay-slips showing receipt of said pension.[3] "[T]he fact that information sought by [BANA] may be more easily accessible from tax returns than from depositions or other financial documents does not, without more, constitute

---

[3] As some of these documents are designated Confidential pursuant to the Projective Order (ECF 39), they are not attached to minimize the filing of documents under seal. Plaintiff will gladly furnish copies at the Court's request.

a compelling need." *Gates*, 2005 U.S. Dist. LEXIS 5523, at 7; *see also Bernstein v. Mafcote, Inc.*, 2014 U.S. Dist. LEXIS 98498, at *7-8 (D. Conn. July 21, 2014). BANA is well aware that reporting negative information to CRAs makes it virtually impossible for people to open accounts; a BANA employee instructed Ms. Ruane to "immediately" open another account "because she would not be able to do so the following day." Am. Compl. ¶ 36. BANA also certainly knows how indispensable bank accounts are to one's daily life and encourages such reliance with conveniences like direct deposit, which Ms. Ruane used during her 11 years as a BANA customer. *See* Am. Compl. ¶¶ 64, 114.

### D. BANA is not entitled to the names of Plaintiff's other banks.

BANA's request for the identity of other banks where Ms. Ruane had accounts from September 2014 to September 2017 is similarly irrelevant, as BANA's basis for this request is its unfounded claim that Ms. Ruane engaged in similar conduct and made similar claims at other institutions and the fraud on her account was part of a larger scam. Renewed Motion ¶ 25. "Discovery requests cannot be based on pure speculation or conjecture" and require "some modicum of objective support." *Tottenham*, 2002 U.S. Dist. LEXIS 11313, at *4, 6; *Robinson*, 2013 U.S. Dist. LEXIS 180325, at *20 (discovery requests "so speculative and/or irrelevant/remotely relevant … [as to] stretch beyond the broad scope of discovery contemplated by Rule 26"); *In re Fontaine*, 402 F. Supp. 1219, (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party … to explore matter which does not presently appear germane on the theory that it might conceivable become so") (internal citations and quotations omitted). BANA may also look to her consumer reports—which are

readily available to BANA, and some of which she has already produced—for any evidence of similar conduct.[4]

BANA's claim that this discovery is needed to determine Ms. Ruane's location at the time of the fake check deposits (Renewed Motion ¶ 25) is tied to the same threadbare assertion that she was involved in the fraud. BANA claims the discovery will reveal Ms. Ruane's location at the time of the fraud; however, BANA can glean such information from its own records; Ms. Ruane's BANA account activity provides information about her whereabouts at the time of the fraud, and her online login history, as produced by BANA, shows (different) IP addresses for Ms. Ruane's iPhone and for the Android device through which the fake checks were deposited.

BANA's claim that this information is needed to verify Ms. Ruane's loss of income and inability to support her family also fails because the information is available from other sources, including depositions. Such personal financial information is "presumptively confidential" and courts "must balance the countervailing policies of liberal discovery … against maintaining the confidentiality of such documents." *Trudeau*, 237 F.R.D. at 331 (*citing Bonanno*, *Cymaticolor*).

### E. BANA is not entitled to the names of internet and telephone service providers.

In claiming it is entitled to the names of Ms. Ruane's internet and telephone service providers from Sept. 26, 2015 to Dec. 26, 2016—which BANA says "may show" "coordination" with whoever deposited the checks (Renewed Motion ¶ 13)—BANA tries to analogize to Fair Labor Standards Act (FLSA) cases where courts permitted discovery of communications the plaintiffs engaged in while employed by the defendants. *Id.* at ¶¶ 14-16. In those cases, the timeframe is limited to plaintiffs' employment, and courts often ordered that sample records first be produced to establish relevance and prevent fishing expeditions. *See, e.g., Ritz v. Directory*

---

[4] According to EWS's website, negative records stay on someone's consumer report for up to seven years (*see* https://www.earlywarning.com/consumer-info/your-consumer-report.html); and up to five years for Chex (*see* https://www.chexsystems.com/web/chexsystems/consumerdebit/otherpage/AnswerstoFrequentlyAskedQuestions).

*Publ'g Solutions, Inc.,* 2014 U.S. Dist. LEXIS 66088, at *2 (E.D.N.Y. May 14, 2014); *Folger v. Medicalodges, Inc.,* 2013 U.S. Dist. LEXIS 169956, at *5 (D. Kan. Dec. 3, 2013); *Perry v. Margolin & Weinreb Law Group, LLP*, 2015 U.S. Dist. LEXIS 88071, at *11 (E.D.N.Y. July 7, 2015).

Unlike FLSA cases where the relevant time period is easily defined, BANA offers no basis for its proposed timeframe. Instead, BANA arbitrarily proposes a one-year-and-three-month time period to test its baseless hypothesis that Ms. Ruane was in contact with whoever deposited the checks. BANA's earlier subpoenas (*see* **Ex. C**) make clear that it seeks records of all of Ms. Ruane's incoming and outgoing calls, text messages, and emails, *including their content*. The fact that Ms. Ruane is a low-income person who had fake checks deposited into her account via an Android device does not by itself entitle BANA to over a year's worth of her personal communication records. Indeed, in the FLSA cases cited by BANA, the defendants did not seek, and the courts did not grant, access to the content of the communications. *See Ritz,* 2014 U.S. Dist. LEXIS 66088; *Folger,* 2013 U.S. Dist. LEXIS 169956. Moreover, if BANA has additional evidence (such as a phone number) for the Android device used to deposit the checks, it should have turned over such information to Ms. Ruane by this stage of the litigation.

In conclusion, Plaintiff respectfully requests that BANA's Renewed Motion be denied.

Dated: September 12, 2018  
       New York, New York

Respectfully submitted,

*/s/ Eve Weissman*_____  
Eve Weissman  
Susan Shin  
New Economy Project  
121 West 27th Street #804  
New York, NY 10001  
Tel: (212) 680-5100  
Fax: (212) 925-2092

Brian Bromberg  
Bromberg Law Office, P.C.  
26 Broadway, 21st Floor  
New York, NY 10004

                                                                             Tel: (212) 248-7906
                                                                             Fax: (212) 248-7908

cc: All counsel of record via ECF                      *Attorneys for Plaintiff*