UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ADIAHA A. RUANE,

                      Plaintiff,

-against-

BANK OF AMERICA, N.A. CHEX SYSTEMS, INC., and EARLY WARNING SERVICES, LLC,

                      Defendant.

Civil Action No.: 1:17-cv-3704 (PKC)(PK)

## DEFENDANT EARLY WARNING SERVICES LL'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE FIRST AMENDED COMPLAINT

Defendant Early Warning Services, LLC ("EWS"), by counsel, hereby opposes Plaintiff's Motion to Amend the First Amended Complaint ((the "Motion") (Dkt. No. 81)).

### INTRODUCTION

Plaintiff has needlessly dragged this proceeding out for over a year, adding new parties and allegations despite discovery revealing no *facts* to support her allegations. Plaintiff's Proposed Second Amended Complaint (("PSAC") (Dkt. No. 81-1)) fares no better than its previous iterations. Here, leave to amend should be denied. The proposed amendment is futile and the amendment fails to cure the deficiencies in Plaintiff's Amended Complaint, which EWS identified to Plaintiff in August 2018.

Plaintiff has no claim against EWS. The purported basis for Plaintiff's claim against EWS is the reporting of information furnished by Bank of America, N.A. ("BANA"). Basically, Plaintiff alleges that EWS should not have relied upon BANA's reporting when it had no reason to believe it was inaccurate (which it is not). In fact, discovery from BANA has revealed the details of BANA's underlying investigation into the activity on Plaintiff's account. BANA provided a

37197947v1

detailed letter on November 20, 2018 outlining the investigation undertaken by BANA *before* it decided to report Plaintiff's account for fraud. A copy of BANA's letter is attached hereto as **Exhibit A**. Undeterred by these facts, Plaintiff has chosen to forge ahead with her legally and factually unsupported claim against EWS. In her crusade, Plaintiff has proposed yet another version of her complaint that again fails to add any facts to support her claim that EWS inaccurately reported BANA's decision to close her account or followed unreasonable procedures in reporting BANA's decision. Therefore, her Motion for Leave to Amend should be denied.

## FACTUAL BACKGROUND

This lawsuit arises out of BANA's investigation and reporting of suspected fraudulent checks deposited into Plaintiff's checking account. (Am. Compl. ¶ 2.)[1] On September 27, 2016, five allegedly fraudulent checks, payable to Plaintiff, were deposited into Plaintiff's BANA checking account. (Am. Compl. ¶¶ 28, 47.) BANA determined she was responsible for the fraud and closed her account. (Am. Compl. ¶ 32.) On September 29, 2016, BANA sent three letters to Plaintiff, one stating "[a]fter a careful review, we've made the decision to close your account" and that BANA "may report the account to the following reporting agencies: ChexSystems, Inc.[("Chex")], [EWS], or both." (Am. Compl. ¶ 43.) After BANA closed Plaintiff's account for the suspected fraud, BANA reported to EWS that it had "Closed for Cause" Plaintiff's account for "[t]ransacting (or attempting to transact) with an account in an unauthorized or prohibited manner." (Am. Compl. ¶ 71.) Plaintiff claims EWS reported Plaintiff to at least one financial institution "[a]s a result of BANA's reporting." (Am. Compl. ¶ 140.)

---

[1] The background section is drawn from Plaintiff's Amended Complaint (Dkt. No. 42), as that remains the operative complaint.

2

Eighteen months after BANA closed her account and reported closing her account to EWS, EWS was informed *for the first time* that Plaintiff disputed the account when she sent a March 19, 2018 letter. (Am. Compl. ¶ 87.) EWS investigated the dispute and "found that the disputed information is incomplete, inaccurate, or its accuracy cannot be verified as of the date it was furnished to [EWS]." (Am. Compl. ¶ 89.) EWS deleted the information from Plaintiff's consumer report and informed Plaintiff of the results by April 9, 2018, mere weeks after Plaintiff's first and only dispute. (*See* Am. Compl. ¶ 89.)

### **PROCEDURAL BACKGROUND**

On June 19, 2017, Plaintiff filed her original complaint against BANA and Chex. (Dkt. No. 1.) Over one year later, on July 2, 2018, Plaintiff filed her Amended Complaint to add EWS. (Dkt. No. 42.) With respect to EWS, she brings claims under 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act ("FCRA"), the New York Fair Credit Reporting Act, the California Consumer Credit Reporting Act, and state law defamation claims. On August 13, 2018, EWS requested a Pre-Motion Conference to file a Motion to Dismiss. (Dkt. No. 61.) On September 18, 2018, after conducting a hearing to discuss the deficiencies in the Amended Complaint, the Court granted EWS' Motion, permitting EWS to file a motion to dismiss. On October 15, 2018, EWS served its Motion to Dismiss. (Dkt. No. 75.) Accordingly, Plaintiff's deadline to amend her Amended Complaint as a matter of right expired on November 5, 2018. *See* Fed. R. Civ. P. 15(a)(1)(a). On November 14, 2018, Plaintiff filed a Motion for Extension of Time to amend the Amended Complaint (Dkt. No. 80), attaching a proposed second amended complaint. On November 20, 2018, BANA provided Plaintiff a detailed chronology outlining its original investigation and contribution of her account. *See* **Exhibit A**. After a hearing with the Court,

Plaintiff filed the instant Motion on November 30, 2018, attaching a *different* proposed second amended complaint.  (*Compare* Dkt. No. 80-1, *with* Dkt. No. 81-3.)

**LEGAL STANDARD**

Leave to amend under Fed. R. Civ. P. 15(a)(2) is appropriately denied when the proposed amendment is futile.  *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Id.*  To withstand a motion under Rule 12(b)(6), the complaint must "contain sufficient factual matter" that will "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that merely "tenders naked assertion[s] devoid of further factual enhancement" will not suffice.  *Iqbal*, 556 U.S. at 678.  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A complaint should be dismissed where a plaintiff has not nudged its claims across the line from conceivable to plausible."  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 596 (E.D.N.Y. 2017) (quoting *Twombly*, 550 U.S. at 555).  Here, Plaintiff has failed to add any facts that would nudge her claims across the line from conceivable to plausible.

**ARGUMENT**

**I.     Plaintiff's PSAC has not stated a claim under the FCRA.**

Plaintiff's proposed amendments fail to allege facts sufficient to support two of the elements of her claim.  To succeed on a claim under § 1681e(b), a plaintiff must show the consumer reporting agency reported inaccurate information about the plaintiff and failed to follow reasonable procedures to assure the accuracy of its credit report.  *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994).  Plaintiff has not added facts to support either.  Therefore, her amendments are futile.

### A. EWS reported accurate information about Plaintiff.

Plaintiff's proposed amendments do not cure the fatal defect to her claim -- that EWS reported only accurate information about her. In a § 1681e(b) claim, "the threshold question is whether the challenged information is accurate." *Whelan*, 862 at 829. If so, "no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* Reporting that accurately reflects the furnisher's characterization of the account constitutes accurate reporting. *Cahlin v. Gen Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). A credit reporting agency ("CRA") must correctly report information furnished by the creditor, rather than adjudicate consumer-creditor disputes. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).

Here, Plaintiff alleges EWS reported information BANA reported to it and does not claim EWS did so inaccurately. There is no question here that the accounts at issue belonged to Plaintiff – her dispute is that BANA incorrectly characterized her activity as fraudulent. Plaintiff's issues with BANA's characterization of her account activity have *nothing to do* with EWS. As alleged by Plaintiff, BANA reported to EWS her account was "Closed for Cause" for "transacting (or attempting to transact) with an account in an unauthorized or prohibited manner." (Am. Compl. ¶ 71; PSAC ¶ 71.) Then, Plaintiff alleges EWS reported Plaintiff to a financial institution "for transacting (or attempting to transact) with an account in an unauthorized or prohibited manner." (Am. Compl. ¶ 140; PSAC ¶ 140.) Even Plaintiff alleges this reporting occurred "as a result of BANA's reporting." (Am. Compl. ¶ 140; PSAC ¶ 140.) Plaintiff's dispute letter sent to EWS and quoted in her Amended Complaint states "Bank of America closed her account and reported her negatively to consumer reporting agencies." (Am. Compl. ¶ 87; PSAC ¶ 140.) EWS reported exactly what BANA did and Plaintiff's proposed amendments do not allege otherwise.

Courts have rejected similar attempts to paint accurate reporting as inaccurate in dismissing section 1681e(b) claims. In *Wright v. TRW Credit Data,* the plaintiff claimed the consumer reporting agency inaccurately reported a repossession because he contended the repossession was illegal. 588 F. Supp. 112, 114 (S.D. Fla. 1984). Because plaintiff's vehicle had in fact been repossessed, which plaintiff conceded, and "it is axiomatic that no claim can be stated under this provision unless the plaintiff demonstrates that the report which he challenges was inaccurate," the court granted the defendant's motion to dismiss. *Id.* Similarly, in *Cahlin*, the consumer alleged the consumer reporting agency violated § 1681e(b) by reporting his account as "charged off" even though he had settled his account with the creditor. 936 F.2d at 1155-59. The FCRA claim failed because the "reports accurately reflected [the creditor's] current characterization of the account and how it had been previously reported and therefore [were] not actionable under [the] FCRA." *Id.* at 1160. As another court has noted, "[w]hen a credit reporting correctly reports the information furnished by the creditor, the credit report is considered 'accurate' within the meaning of the FCRA, even when there in an ongoing dispute as to the validity of the debt." *Gauci v. Cit Mortg.*, No. 2:11-cv-01387, 2012 U.S. Dist. LEXIS 60153, at *15 (C.D. Cal. Apr. 30, 2012); *see also George v. Chex Sys.*, No. 16-cv-2450, 2017 U.S. Dist. LEXIS 5191, at *6 (D. Kan. Jan. 11, 2017) (granting motion to dismiss because defendant had reported the account as the financial institution had reported the account). Like the foreclosure in *Wright* and the account in *Cahlin*, EWS accurately reported BANA's characterization of her account, which forecloses FCRA liability.

Plaintiff does not, and cannot, point to an inaccuracy in the report.[2] She does not allege the account did not belong to her. She does not allege BANA *did not* close her account for cause

---

[2] As discussed herein, Plaintiff's attacks on the accuracy of the report are entirely borne out of her disagreement with the BANA decision reported by EWS. However, her amendments add a confusing reference to EWS' "discrete" reporting of what BANA did (closed her account) and

6

after it determined she had transacted or attempted to transact with her account in an unauthorized manner. Nor could she. Rather, she bases her suit against EWS on her belief that BANA should not have closed her account and should not have reported her to EWS. As such, this amounts to an improper collateral attack on the information reported to EWS.

      **B.      The Court should not allow Plaintiff's collateral attack on EWS' reporting.**

Because Plaintiff cannot establish EWS inaccurately reported the status of her account, she instead attempts to bootstrap her claim against EWS to her attack on BANA's fraud determination. This collateral attack must fail.

"The FCRA does not provide a cause of action to collaterally attack an accurate credit report." *Wadley v. Equifax Inf. Servs., LLC*, 396 F. Supp. 2d 677, 679-80 (E.D. Va. 2005). Indeed, "courts have been loath to allow consumers to mount collateral attacks" on the validity of underlying accounts on credit reports. *Carvalho*, 629 F.3d at 891 (noting courts disfavor collateral attacks because consumer reporting agencies "simply collect and report information furnished by others"); *see also Reyes v. Experian Info. Sols.* No. 16-00563, 2017 U.S. Dist. LEXIS 170036, at *9-10 (C.D. Cal. Oct. 13, 2017) ("FCRA claims aren't the proper vehicle for collaterally attacking the legal validity of consumer debts. Credit reporting agencies aren't tribunals—they simply collect and report information furnished by others."). Courts do not allow collateral attacks because only the furnisher may resolve the issue. *See Okocha v. Trans Union, LLC*, No. 08-cv-3107, 2011 U.S. Dist. LEXIS 39998, at *17, (E.D.N.Y. Mar. 31, 2011); *see also Fashakin v. Nextel Communs.*, No. 05-cv-3080, 2009 U.S. Dist. LEXIS 25140, at *41-42 (E.D.N.Y. Mar. 25, 2009).

---

why BANA did it (for transacting with an account in an unauthorized manner). (PSAC ¶¶ 168-70.) To the extent Plaintiff is attempting to meet the threshold showing of inaccuracy with these allegations, that attempt fails. EWS did not "discretely" report anything but the information provided by BANA. The information reported by BANA is supported by BANA's internal investigation and discovery will not reveal facts to show *any* inaccuracy.

These collateral attacks are vulnerable to dismissal at the pleadings stage. *Dauster v. Household Credit Servs.*, 396 F. Supp. 2d 663, 665 (E.D. Va. 2005) (granting defendant's Rule 12(c) motion under "identical" standard of review as Rule 12(b) motion because the plaintiff was "attempting to collaterally attack the basis of accurately reported information"); *see also Wright*, 588 F. Supp. at 114-15 (granting motion to dismiss by [CRA] because the plaintiff attempted to attack validity of bank's reporting).

Plaintiff's entire Complaint and the proposed amendments thereto can only be characterized as an attack on BANA's determination that she bore responsibility for the fraudulent checks. She consistently attributes her issues to BANA's decision and its reporting of the decision to EWS. For example, Plaintiff alleges "BANA's negative reporting of her to consumer reporting agencies such as Chex Systems and EWS had made it virtually impossible for her to open an account at another financial institution." (Am. Compl. ¶ 53; PSAC ¶ 53.) Likewise, the dispute letter Plaintiff sent EWS and quoted in her Amended Complaint focuses on why BANA improperly attributed the fraud to her, not how EWS inaccurately reported the account. (*See* Am. Compl. ¶ 87; PSAC ¶ 87.) Further, Plaintiff's Amended Complaint contains allegations directly supporting the reasons for disallowing a collateral attack: "BANA was in the best position to obtain and review information regarding the disputed deposits on Ms. Ruane's account." (Am. Compl. ¶ 92; PSAC ¶ 92.) Plaintiff's attempt to further drag EWS into her dispute with BANA must fail.

### C. EWS followed reasonable procedures.

Assuming, *arguendo*, EWS inaccurately reported what BANA had reported to it, Plaintiff's claim still fails because she has not alleged sufficient facts to support that EWS failed to follow reasonable procedures. "[E]ven if the information is inaccurate, a [CRA] is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to

follow reasonable procedures in generating the inaccurate report." *Whelan*, 862 F. Supp. at 829. Plaintiff's Amended Complaint and PSAC, contain no facts that would render it unreasonable for EWS to rely on BANA's reporting of the account.

"Courts have consistently held, however, that a CRA does not violate its duty to assure reasonable accuracy pursuant to Section 1681e(b) simply by reporting an inaccurate debt or judgment, *absent prior reason to believe that its source was unreliable*." *Frydman v. Experian Info. Sols., Inc.*, No. 14-cv-9013, 2016 U.S. Dist. LEXIS 107139, at *39 (S.D.N.Y. Aug. 11, 2016) (emphasis added). As such, the FCRA "does not hold a consumer reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the consumer reporting agency receives notice of systemic problems with its procedures." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004); *see also Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080-81 (D. Or. 2007) (CRA "was entitled to rely on facially credible information it received from [the plaintiff's] creditors"); *Murphy v. Midland Credit Mgmt.*, 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006) ("A [CRA] is not liable, as a matter of law, for reporting information from records of financial institutions, unless there is notice of prevalent unreliable information from a furnisher which would put a [CRA] on notice that systematic problems existed within the system, or unless it has prior notice from the consumer that the information might be inaccurate."). Indeed, the Federal Trade Commission's guidance provides that a CRA follows reasonable procedures if it relies on information from a reputable source unless it has some notice of systemic problems with the accuracy of its reports. *See 40 Years of Experience with the Fair Credit Reporting* Act, at 67, available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf. Likewise, the Consumer Protection

9

Financial Protection Bureau recognizes that CRAs "rely on furnishers to report information on consumers that is complete and accurate."[3]

In the seminal case on the issue, the Seventh Circuit affirmed the district court's granting of the defendants' motion to dismiss a section 1681e(b) claim. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994). The defendant credit reporting agencies argued they had followed reasonable procedures by obtaining the information from a "presumptively reliable source" – the Judgment Docket. *Id.* The court agreed. *Id.* The court noted that requiring credit reporting agencies to go beyond the face of records provided it "would also require credit reporting agencies to engage in background research which would substantially increase the costs of their services." *Id.* Although the *Henson* court concerned the presumptive reliability of court records, courts have applied this holding to include other presumptively reliable sources, such as creditors and banks. *See Saenz*, 621 F. Supp. 2d at 1080-81 (citing *Henson* for the proposition that defendant "was entitled to rely on facially credible information it received from [the plaintiff's] creditors"). In fact, one court has refused to find procedures unreasonable "where the complaint shows that the consumer reporting agency accurately reported information from a national bank." *Allmond v. Bank of Am.*, No. 07-cv-186, 2008 U.S. Dist. LEXIS 4788, at *13-17 (M.D. Fla. Jan. 23, 2008) (granting motion to dismiss and applying *Henson* standard to information obtained from BANA); *see also Darrin v. Bank of Am., N.A.*, No. 12-cv-00228, 2014 U.S. Dist. LEXIS 66461, at *17-18 (E.D. Cal. May 14, 2014) (granting motion to dismiss of section 1681e(b) claim because "the

---

[3] Consumer Financial Protection Bureau, *Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data*, § 4.2 (Dec. 2012), *available at* https://www.consumerfinance.gov/data-research/research-reports/key-dimensions-and-processes-in-the-u-s-credit-reporting-system ("The NCRAs do not conduct independent checks or audits to determine if the data is accurate, such as contacting a consumer to ask if she is properly associated with an account or if the balance reported on an account is true, or checking the record-keeping practices of a furnisher).

information that Bank of America reported and that appeared in the CRA Defendants' reports is not attributable to the CRA Defendants' §1681e(b) procedures. Rather, this information is attributable to Bank of America, who provided this information to the CRA Defendants."); *see also Serfess v. Equifax Credit Info. Servs.*, No. 13-406, 2014 U.S. Dist. LEXIS 120138, at *18 (D.N.J. Aug. 28, 2014) (finding "reliance upon [information provided by] Bank of America is reasonable" where plaintiff did not show that the furnisher was unreliable).[4]

Here, Plaintiff's amendments provide no facts to support an argument that EWS should have doubted BANA's reporting and BANA's discovery responses and correspondence only further support that their reporting was accurate *and* reliable. Nor does Plaintiff add any facts to show that EWS ever had any notice the reported information was disputed. Moreover, Plaintiff does not allege EWS had access to a police report or formal fraud claim, because she did not file such a claim. (*See* Am. Compl. ¶¶ 39, 82; PSAC ¶ 39, 82.) Instead, with respect to EWS' procedures, Plaintiff makes only conclusory statements relating to EWS' allegedly insufficient "independent evaluation of the accuracy of the disputed reporting." But this grossly overstates

---

[4] Courts may properly dismiss allegations concerning reasonable procedures at the pleading stage. As discussed above, the *Henson* court affirmed a dismissal under Rule 12(b)(6) on a reasonable procedures claim. Other courts have found deficient allegations of reasonable procedures could not survive the pleadings stage. *Ogbon v. Beneficial Credit Servs.*, No. 10-cv-03760, 2011 U.S. Dist. LEXIS 11615, at *8 (S.D.N.Y. Feb. 1, 2011) ("The § 1681e(b) [claim] is also defective because Plaintiff does not provide any facts suggesting that each CRA Defendant failed to follow reasonable procedures."); *see also Nguyen v. Ridgewood Sav. Bank*, No. 14-cv-1058, 2015 U.S. Dist. LEXIS 64301, at *33 (E.D.N.Y. May 15, 2015); *McNamara v. Hireright Sols., Inc.*, No. 13-c-5215, 2014 U.S. Dist. LEXIS 11056, at *21-22 (N.D. Ill. Jan. 29, 2014) (dismissing complaint because defendant "prepared a background report that [was] consistent with the face of the underlying Circuit Court Record" and, therefore, had followed reasonable procedures as a matter of law); *Eller v. Experian Info. Sols., Inc.*, No. 09-cv-00040, 2009 U.S. Dist. LEXIS 74583, at *7-8 (D. Colo. Aug. 20, 2009). Particularly on point here, in *Jackson v. Warning*, the court dismissed a § 1681e(b) claim because the plaintiff had not alleged the defendants had any notice of systemic problems with the accuracy of information obtained from a reputable source. No. 15-1233, 2016 U.S. Dist. LEXIS 172589, at *14-15 (D. Md. Dec. 13, 2016).

EWS' obligations and courts have outright "rejected the contention that CRAs are required to conduct manual reviews of all the items that they receive before including them in a consumer's credit file." *Frydman*, 2016 U.S. Dist. LEXIS 107139, at *40.

In addition, the only allegations Plaintiff added to her PSAC relate to an EWS webinar and blog post on identity theft. (PSAC ¶¶ 182-89.) It is unclear how EWS' knowledge of the problems of identity theft could give rise to an obligation to manually review every fraud contribution received from a reliable source like BANA. (PSAC ¶ 198.) Likewise, Plaintiff's additional allegations relating to previous lawsuits against EWS bear no relevance on the issues here. (PSAC ¶¶ 198–202.) First, those cases related to an entirely separate product related to fraud committed by bank employees, not account-holders. Second, Plaintiff relies on unproven allegations in the complaints, rather than findings by the courts. Moreover, neither case resulted in a finding of liability on the part of EWS. Finally, Plaintiff claims her additional allegations, learned through discovery, support her claim because they demonstrate EWS did not conduct a manual review of BANA's decision to close her account. As with Plaintiff's Amended Complaint, the gravamen of Plaintiff's additional allegations that EWS failed to follow reasonable procedures rests on the assumption that EWS must conduct a manual review of each piece of information it reports. But, this duty simply does not exist.

Because Plaintiff has not alleged any additional facts that allow her to state a claim under § 1681e(b), her amendment is futile, and the Court should deny her Motion.[5]

---

[5] EWS has only addressed the futility of Plaintiff's amendment with respect to the accuracy and procedures element of a § 1681e(b) claim because her willfulness claim necessarily fails if she cannot meet those elements. *See Wenning v. On-Site Manager, Inc.*, No. 14-cv-9693, 2016 U.S. Dist. LEXIS 81126, at *25 (S.D.N.Y. June 22, 2016). Likewise, the state law claims go as the § 1681e(b) claim goes. *See Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005); *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1060-61 (C.D. Cal. 2014).

37197947v1

Respectfully submitted this 13th day of December, 2018.

*/s/ Meagan A. Mihalko*
Cindy D. Hanson
Troutman Sanders LLP
600 Peachtree Street NE
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
Email: cindy.hanson@troutman.com
*Pro Hac Vice*

Amanda Lyn Genovese
Troutman Sanders LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Email: amanda.genovese@troutman.com

Meagan A. Mihalko
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1281
Facsimile: (804) 697-1339
Email: meagan.mihalko@troutman.com
*Pro Hac Vice*

*Counsel for Defendant Early Warning Services, LLC*

---

Should the Court allow Plaintiff to amend yet again, EWS reserves its right to challenge the sufficiency of the Complaint with respect to those counts.

37197947v1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2018, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record.

>           */s/ Meagan A. Mihalko*
>           Meagan A. Mihalko

37197947v1