UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
ADIAHA A. RUANE,                                                     :     No.: 17-CV-3704 (PKC) (PK)
                                                                     :
                        Plaintiff,                                   :
                                                                     :
             – against –                                             :
                                                                     :
BANK OF AMERICA, N.A., CHEX SYSTEMS, INC.,                           :
and EARLY WARNING SERVICES, LLC,                                     :
                                                                     :
                        Defendants.                                  :
                                                                     :
-------------------------------------------------------------------- X

## PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANTS EARLY WARNING SERVICES, LLC'S AND BANK OF AMERICA, N.A.'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE FIRST AMENDED COMPLAINT

Plaintiff Adiaha A. Ruane ("Plaintiff") hereby replies to Defendants Early Warning

Services, LLC ("EWS")' and Bank of America, N.A. ("BANA")'s Opposition to Plaintiff's

Motion to Amend the First Amended Complaint (respectively, "EWS Opp." and "BANA Opp.").

### INTRODUCTION

EWS has essentially admitted that it found the information Plaintiff disputed on her EWS

report to be incomplete, inaccurate, or unverifiable. Plaintiff has alleged in the Proposed Second

Amended Complaint ("PSAC") that EWS inaccurately reported her for fraud without following

reasonable procedures, while knowing that such reporting would cause nearly all financial

institutions to reject Plaintiff as a customer. EWS's sole argument in opposition to the instant

motion is that the proposed amendments are futile.[1] In the Second Circuit, an amendment to a

---

[1] EWS concedes that Plaintiff was entitled to amend the First Amended Complaint ("FAC") as of right under FRCP 15, following service of EWS' Motion to Dismiss (Dkt. No. 75). *See* EWS Opp. p. 3. (Though EWS claims that Plaintiff's deadline to do so was November 5, 2018, FRCP 6(d) allowed Plaintiff another three days, or until November 8, since EWS served its motion by mail, on October 15.) BANA is incorrect that Plaintiff's deadline was in July 2018, *see* BANA Opp. p. 1, as the July 2018 deadline explicitly did not apply if information unknown to the

pleading is not futile if the proposed claim could withstand a motion to dismiss pursuant to FRCP 12(b)(6). The only issue before the Court is thus whether the PSAC contains enough factual matter that, if taken as true, states a claim to relief that is plausible on its face.[2] The Court should find that Plaintiff has stated claims against EWS for violations of the Fair Credit Reporting Act (FCRA) and related state laws,[3] and grant Plaintiff leave to amend.

## LEGAL STANDARD

In the Second Circuit, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [FRCP] 12(b)(6)." *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). To survive a 12(b)(6) motion, a complaint must contain enough factual matter that, if taken as true, states a claim to relief that is plausible on its face. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007) *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). As Plaintiff is operating without information obtained through full discovery, she is not obligated to provide extensive or complete factual allegations. *See Keiler v. Harlequin Ent.*, 751 F. 3d 64, 68

---

parties by that date later became available to them. *See* Initial Scheduling Order (Dkt. No. 28) pp. 1-2. Plaintiff has demonstrated that information unknown to her by July 2018 later became available. *See* Declaration of Susan S. Shin (Dkt. No. 81-2). BANA's argument that the parties would have to expend time and energy responding to the PSAC, *see* BANA Opp. p. 2, is also without merit. The proposed amendments are directed *solely* at EWS, and would require BANA to simply add paragraphs with the same stock response it provided to EWS-directed allegations in the FAC, and renumber paragraphs accordingly. Also, as Plaintiff informed Defendant Chex Systems, Inc. ("Chex") on July 27, 2018, Chex's answer to the FAC (Dkt. No. 47) contains incorrectly numbered paragraphs; however, Chex did not yet submit a corrected answer and so would need to submit an amended answer in any event. EWS has not yet answered any of the complaints.

[2] EWS claims that a letter to Plaintiff's counsel from BANA's outside counsel dated November 20, 2018 "[outlines] the investigation undertaken by BANA *before* it decided to report Plaintiff's account for fraud," *see* EWS Opp. pp. 1-2, Ex. A (Dkt. No. 83-1), but – as Plaintiff's counsel has informed BANA's counsel – this letter fails to make clear what information BANA learned *at the time it conducted its initial investigation* and what it learned *later* – for example, during a reinvestigation or after this litigation commenced. *See* Exhibit A, Declaration of Eve Weissman ("Weissman Decl."). During a recent call, counsel for BANA acknowledged that his letter contains at least some information not initially known to BANA. *See id*. EWS also mischaracterizes this letter as "discovery" and the contents therein as "facts," *see* EWS Opp. pp. 1-2, even though BANA has not produced or identified documents corroborating certain statements in this letter. *See* Weissman Decl. Counsel for BANA also did not furnish this letter until November 20, nearly two months after the Court ordered BANA to turn over information relating to the core of its investigation. *See* September 26, 2018 Transcript pp. 30-32, 70-71 (Dkt. No. 79).

[3] The Court should also find that Plaintiff has stated claims against EWS under the New York Fair Credit Reporting Act and California Consumer Credit Reporting Agencies Act, as such claims rest upon the same factual allegations as Plaintiff's FCRA claims.

(2d Cir. 2014) (a complaint need not contain detailed or elaborate factual allegations, but requires only allegations sufficient to raise entitlement to relief above a speculative level).

## ARGUMENT

### I.   Plaintiff has stated a claim for willful and negligent violations of § 1681e(b).

A consumer reporting agency (CRA) violates § 1681e(b) of the FCRA if (1) the consumer report contains inaccurate information and (2) the CRA did not follow reasonable procedures to assure maximum possible accuracy. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 415 (4th Cir. 2001) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1994); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citations omitted).[4]

### A.   EWS has essentially admitted that it reported inaccurate information.[5]

For all its protests that it reported *accurate* information about Plaintiff, EWS admits that it deleted the information after Plaintiff disputed it.[6] Plaintiff received a letter from EWS stating that it "found that the disputed information is incomplete, inaccurate, or its accuracy cannot be verified as of the date it was furnished to [EWS]." FAC/PSAC ¶ 89. Plaintiff also alleges – and the Court must therefore take as true – that it is inaccurate that she "[t]ransact[ed] (or attempt[ed]

---

[4] To prevail on a § 1681e(b) negligence claim, a plaintiff must establish that the CRA's failure to follow reasonable procedures was negligent, that the plaintiff was injured, and that the CRA's negligence caused plaintiff's injury; a plaintiff need not establish injury to prevail on a willfulness claim, but must show that the failure to follow reasonable procedures was knowing or reckless. *Wenning v. On-Site Manager, Inc.*, 2016 U.S. Dist. LEXIS 81126, at *24-25 (S.D.N.Y. June 22, 2016); *Pedro v. Equifax, Inc.*, 186 F. Supp. 3d 1364, 1367 (N.D. Ga. 2016); *Taylor v. Screening Reports, Inc.*, 2015 U.S. Dist. LEXIS 86262, at *9 (N.D. Ill. July 2, 2015); *see also* 15 U.S.C. §§ 1681n, 1681o. Plaintiff need not establish each of these elements but need only allege sufficient facts that, if taken as true, state a claim to relief that is plausible on its face.

[5] Since EWS nevertheless argues that it reported *accurate* information about Plaintiff, Plaintiff addresses this argument accordingly.

[6] In EWS' Memorandum in Support of Its Motion to Dismiss Plaintiff's Amended Complaint, served on Plaintiff on October 15, 2018, EWS states, "Indeed, … EWS deleted the information once it learned of Plaintiff's dispute."

to transact) with an account in an unauthorized or prohibited manner" – *i.e.*, committed fraud – as EWS reported. FAC/PSAC ¶¶ 27, 29-30, 38, 64, 78, 87.[7]

Though the Second Circuit has yet to address the issue, the Third, Fourth, Fifth, Ninth, and D.C. Circuits have all held that a credit report is inaccurate under § 1681e(b) either "when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415 (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)) (alterations and internal quotation marks omitted) (emphasis added); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 Fed. Appx. 896, 902 (3d Cir. 2011); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).

Given the overwhelming weight of this authority, district courts in the Second Circuit have adopted the "materially misleading" test. *See, e.g., Wenning v. On-Site Manager, Inc.*, 2016 U.S. Dist. LEXIS 81126, at *26; *Fitzgerald v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 156395, at *32-33 (S.D.N.Y. Feb. 28, 2011). In *Koropoulos*, the D.C. Circuit found that holding CRAs liable only where a report contains "technically untrue" statements would be a violation of the FCRA's statutory purpose and contravene the substance of the law. 734 F.2d at 40 ("reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer"). Finding that a technical accuracy defense violated the intent of the FCRA, the *Koropoulos* court concluded that a report that was "technically accurate" but nonetheless materially incomplete or misleading is inaccurate under § 1681e(b).

---

[7] Contrary to EWS' arguments, Plaintiff does allege that EWS reported inaccurate information, *see* FAC/PSAC ¶¶ 27, 29, 64, 87, 165-66; PSAC ¶¶ 167-74, 210, 212, 214, and does allege facts to show EWS should have doubted the information furnished by BANA, *see* PSAC ¶¶ 198-205 (setting forth allegations concerning two putative class action lawsuits against EWS, an EWS "Internal Fraud Prevention Services" product, and CFPB complaints against EWS and BANA). Based on recent discovery from EWS, the proposed allegations also set forth that EWS apparently made no effort to verify whether Plaintiff was the perpetrator, and not the victim, of the fraud, nor did EWS ask BANA if Plaintiff in fact committed the fraud, given that BANA indicated a $0 loss. *See* PSAC ¶¶ 171-73.

The information that EWS reported about Plaintiff is inaccurate under either standard. It is "technically inaccurate" because Plaintiff did not commit fraud or "transact[] (or attempt[] to transact) with an account in an unauthorized or prohibited manner." Even if the Court agrees with EWS's argument that it accurately conveyed *the reason* for which BANA closed Plaintiff's account – even if Plaintiff did not in fact commit fraud on her account – a jury could reasonably conclude that the disputed language was "materially misleading," and could mislead a person reading Plaintiff's EWS report to conclude that Plaintiff had, in fact, transacted or attempted to transact with her account in an unauthorized or prohibited manner, *i.e.*, committed fraud. *See*, *e.g.*, *Dalton*, 257 F.3d at 416 ("If a jury concludes, as it reasonably could, that the report indicates that Dalton was guilty of a felony, inaccuracy would be established because it is undisputed that Dalton pled guilty to a misdemeanor…the evidence in the summary judgment record is sufficient to create a triable issue on the accuracy of the report"). At the very least, Plaintiff has made out a *prima facie* showing of inaccuracy "tending to show" that EWS prepared a report containing inaccurate information, which is more than enough to withstand a motion to dismiss. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d at 1333.

EWS cites a number of non-binding cases in support of its accuracy argument, all of which are distinguishable. In *Wright v. TRW Credit Data*, 588 F. Supp. 112, 114 (S.D. Fla. 1984), the plaintiff disputed a reported repossession as illegal, not that the repossession did not take place. In *Gauci v. Citi Mortg.*, 2012 U.S. Dist. LEXIS 60153 (C.D. Cal. Apr. 30, 2012), the plaintiff disputed a debt as invalid – a legal question. In *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, the plaintiff disputed a reported "charge-off" as inaccurate because he later settled the account, not because the creditor did not charge off the account. In *George v. Chex Sys.,* 2017 U.S. Dist. LEXIS 5191 (D. Kan. Jan. 11, 2017), the plaintiff did not dispute the

information as inaccurate, but disputed that the CRA failed to report a bankruptcy discharge. In contrast to the plaintiffs in *Wright* and *Gauci*, Plaintiff is *not* disputing the legality of any reported debt or action; and in contrast to the plaintiffs in *Cahlin* and *George*, she *is* disputing the derogatory information reported by EWS as factually inaccurate – because she in fact did not "transact[] (or attempt[] to transact) with an account in an unauthorized or prohibited manner."

**B.  Plaintiff is not making a collateral *legal* attack on EWS' reporting.**

Unlike the plaintiffs in *Wright* and *Gauci*, or the plaintiff in *Carvalho*, 629 F.3d at 891, who "admitted that all the data on her report was correct on its face, but argued that she was not legally obligated to pay," Plaintiff challenges the *factual* inaccuracy of EWS' reporting. *See Carlisle v. Nat'l Commer. Servs.*, 2016 U.S. Dist. LEXIS 116551, at *31 (N.D. Ga. July 22, 2016) (distinguishing *Carvalho* in finding a factual, not a legal dispute regarding amount owed).

The other cases EWS cites in support of its "collateral attack" argument also involve challenges to the legal validity of a debt, not the factual accuracy of the information reported. *See Okocha v. Trans Union, LLC*, 2011 U.S. Dist. LEXIS 39998, at *17 (E.D.N.Y. Mar. 31, 2011) (distinguishing plaintiff's "collateral legal attack on the validity of the debt" – a question that could be resolved only with the creditor – from "a factual inaccuracy"); *Fashakin v. Nextel Communs.*, 2009 U.S. Dist. LEXIS 25140, at *42-43 (E.D.N.Y. Mar. 25, 2009) (holding plaintiff's dispute was "a collateral attack on the validity of the debt," not a factual challenge); *Reyes v. Experian Info Sols., Inc.*, 2017 U.S. Dist. LEXIS 170036, at *9-10 (C.D. Ca. Oct. 13, 2017) (finding, where the consumer challenged a loan as usurious and void *ab initio*, that the FRCA was not "the proper vehicle for collaterally attacking the legal validity of consumer debts") (internal citation omitted); *Wadley v. Equifax Info. Servs., LLC*, 496 F. Supp. 2d 677, 679 (E.D. Va. 2005) (granting summary judgment where the plaintiff offered no evidence that the

defendant CRA had inaccurately reported an auto loan, but argued that he should not have to pay because the car was defective); *Dauster v. Household Credit Servs.*, 396 F. Supp. 2d 663, 665 (E.D. Va. 2005) (granting defendant's motion for judgment on the pleadings where the plaintiff did not dispute that the defendant CRA accurately reported the status of her credit account, but argued that the item purchased through the account was defective).

**C.  Plaintiff has alleged that EWS failed to follow reasonable procedures.**

**1.  Reasonable procedures must assure "maximum possible accuracy."**

The FCRA requires that a CRA maintain reasonable procedures to assure "maximum possible accuracy," not simply "accuracy." 15 U.S.C. § 1681e(b); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) ("It is important to note that § 1681e(b) erects a standard of 'maximum possible accuracy.' That requires more than merely allowing for the possibility of accuracy."). As the Third Circuit stated in *Cortez*:

> [T]he distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic. For example, in *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986), the Court of Appeals for the Fifth Circuit described that distinction as the difference between reporting that "a person was 'involved' in a credit card scam" and reporting that the consumer "was in fact one of the victims of the scam." *Id.* at 1263. The former statement was undoubtedly true as the consumer had been "involved" in the scam. It was also woefully misleading because it did not inform people that she was involved as a victim of the scam, and not as the perpetrator.

*Id.* There is likewise a world of difference between reporting that there was fraud on someone's bank account and reporting that the accountholder herself committed the fraud. Plaintiff has alleged that she was a victim of the fraud on her account, not the perpetrator. *See* FAC/PSAC ¶¶ 27, 29, 31-32, 37-39, 46-48, 78, 87, 95-117. The PSAC additionally alleges that EWS' procedures were unreasonable in part because they fail to distinguish between victims and perpetrators of fraud. *See* PSAC ¶¶ 171-72, 174-80.

7

### 2.   Parroting does not equal accuracy.

As section 1681e(b) requires "maximum possible accuracy," it is not surprising that courts have soundly rejected EWS' argument that a CRA's reporting is "accurate" as long as it merely parrots information provided by the furnisher. *See Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982) ("[CRA] does not necessarily comply … by simply reporting in an accurate manner the information it receives from creditors"); *O'Brien v. Equifax Info. Serv., LLC*, 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005) (declining to find that a CRA's procedures are reasonable as a matter of law whenever it simply repeats information from a reputable source); *Grigoryan v. Experian Info. Sols., Inc.,* 84 F. Supp. 3d 1044, 1066 (C.D. Cal. 2014) (rejecting proposition that if a CRA accurately repeats furnished information, there is necessarily no 1681e(b) violation).

Nor are EWS' procedures reasonable as a matter of law simply because it parroted information furnished by a national bank. To find that a national bank is a *per se* reliable source, as EWS argues the Court should do, *see* EWS Opp. p. 10, would severely undermine FCRA's remedial purpose. As the Third Circuit stated in *Cortez*, "Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party." 617 F.3d at 710. *See also Wilson v. Corelogic Saferent, LLC*, 2017 U.S. Dist. LEXIS 162928, at *9 (S.D.N.Y. Sept. 29, 2017) ("To accept [defendant's] argument that reliance on information obtained from a government agency, regardless of context, categorically insulates a CRA from liability, would severely undermine FCRA's remedial purpose.") (citing *Cortez*, 617 F.3d at 710); *Ramos v. Genesis Healthcare, LLC*, 141 F. Supp. 3d 341, 347 (E.D. Pa. 2015) ("FCRA is

undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it.").

In *Wilson*, the court rejected the argument that a CRA's procedures were reasonable as a matter of law because it relied on records obtained from a government agency, noting that "courts have not held that reliance on the records received from a governmental agency is *per se* reasonable for purposes of § 1681e(b), but instead have explained that 'reasonableness' under FCRA requires 'context-specific' balancing." 2017 U.S. Dist. LEXIS 162928, at *10 (citing *Wenning*, 2016 U.S. Dist. LEXIS 81126, at *43). Citing to the Fourth Circuit's holding in *Dalton*, the *Wilson* court further noted that "the mere fact that the source of the inaccurate information was a governmental agency or employee does not establish reasonableness as a matter of law." *Id.* at *11. The *Wilson* court also distinguished *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994), which EWS claims is "the seminal case on the issue." EWS Opp. p. 10. In *Henson*, the defendant CRA obtained information directly from a state court's judgment docket; by contrast, the CRA in *Wilson* had "reported inaccurate criminal history information without consulting the court documents themselves or 'the actual and original sources of the information that the CRA was reporting.'" 2017 U.S. Dist. LEXIS 162928, at *12 (quoting *Taylor v. First Advan. Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1109 (N.D. Cal. 2016)).

EWS also cites to obsolete Federal Trade Commission (FTC) commentary, EWS Opp. p. 9, that the FTC rescinded in 2011 when authority to issue interpretive guidance under the FCRA was transferred from the FTC to the Consumer Financial Protection Bureau (CFPB).[8] While the CFPB has explicitly adopted certain FTC commentary as part of its final rules, *see* 12 C.F.R. § 1022, the CFPB does not appear to have adopted the FTC's commentary concerning reputable

---

[8] *See* 76 FR 44462 – Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, *available at* https://www.govinfo.gov/app/details/FR-2011-07-26/2011-18688.

sources.[9] At least three of the cases EWS cites for its "reputable source" argument – *Sarver v.*
*Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d
1074 (D. Or. 2007); and *Murphy v. Midland Credit Mgmt.*, 456 F. Supp. 2d 1082 (E.D. Mo.
2006) – also rely on this now-obsolete FTC commentary. EWS also misrepresents a statement of
*fact* set forth in a paper by the CFPB – that CRAs "rely on furnishers to report information on
consumers that is complete and accurate," *see* EWS Opp. pp. 9-10 – as if it were a CFPB finding
that such reliance is proper and FCRA-compliant. In fact, the CFPB explicitly warns that its
paper does *not* "represent any learnings or conclusions about whether any [national CRAs] are in
compliance with particular statutes or policies."[10] Also, the CRAs to which the CFPB refers in
this paper are Equifax, TransUnion, and Experian – not EWS or Chex. Even *Frydman v.*
*Experian Info. Sols., Inc.*, 2016 U.S. Dist. LEXIS 107139 (S.D.N.Y. Aug. 11, 2016), to which
EWS also cites for its "reputable source" argument, cites a Tenth Circuit opinion setting forth a
more nuanced proposition: "Courts have held CRAs must look beyond information furnished to
them when it is inconsistent with the CRAs' own records, contains a facial inaccuracy, *or* comes
from an unreliable source." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240 (10th Cir.
2015) (emphasis added).[11]

---

[9] *See also* 76 Fed. Reg. 79308-79378 (Dec. 21, 2011), *available at* https://www.govinfo.gov/content/pkg/FR-2011-12-21/pdf/2011-31728.pdf. (This is the CFPB's interim final rule, containing a list of the newly incorporated FTC regulations, which does not include the FTC commentary on reputable sources, previously at 16 C.F.R. § 600).

[10] CFPB, *Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data,* at 2 (Dec. 2012), *available at* https://www.consumerfinance.gov/data-research/research-reports/key-dimensions-and-processes-in-the-u-s-credit-reporting-system.

[11] Either EWS misrepresents other holdings it cites in support of its "reputable source" argument or such cases are distinguishable. *See* EWS Opp. pp. 10-11. EWS implies that the court in *Allmond v. Bank of Am., N.A.*, 2008 U.S. Dist. LEXIS 4788 (M.D. Fla. Jan. 23, 2008), refused to find procedures unreasonable because the CRA accurately reported information from a national bank, when in fact the court noted that the *pro se* plaintiff made virtually *no* allegations concerning the CRA's procedures, and concluded that "[w]ithout more, inaccuracy simply does not suggest unreasonable procedures, at least where the complaint shows that the [CRA] accurately reported information from a national bank." *Id.* at *12-17. In contrast, the FAC and PSAC both make numerous allegations concerning EWS' procedures. Similarly, the full reason for the court's dismissal of the § 1681e(b) claim in *Darrin v. Bank of*

Even if the Court finds a national bank is *per se* a reliable source regardless of context, Plaintiff's current and proposed allegations, taken as true, establish that there was prior reason to believe that the information was unreliable. *See* FAC/PSAC ¶¶ 118-24, 130, 137, 164-66; PSAC ¶¶ 171-73, 176-91, 194, 196-205.

### 3. A CRA's procedures are unreasonable if the potential harm from inaccuracy outweighs the burden of safeguarding against such inaccuracy.

"The standard for evaluating the reasonableness of a[] [CRA]'s procedures is what a reasonably prudent person would do under the circumstances." *Wenning*, 2016 U.S. Dist. LEXIS 81126, at *51 (quoting *Whelan*, 862 F. Supp. at 831) (internal quotation marks omitted). Evaluating the reasonableness of a CRA's procedures entails weighing the potential harm from the inaccuracy against the burden of safeguarding against such inaccuracy. *Wilson*, 2017 U.S. Dist. LEXIS 162928, at *8 (citing *Wenning*, 2016 U.S. Dist. LEXIS 81126, at *51); *see also Houston v. TRW Info. Servs.*, 707 F. Supp. 689, 693 (S.D.N.Y. 1989); *Hutchinson v. Carco Grp.*, 2015 U.S. Dist. LEXIS 130858, at *11-12 (E.D. Pa Sept. 29, 2015 ("it is unusual for a court to make a determination as to reasonableness of a defendant's procedures on a motion to dismiss").

---

*Am., N.A.*, 2014 U.S. Dist. LEXIS 66461 (E.D. Cal. May 14, 2014), was "[b]ecause reporting information that may be inaccurate does not violate § 1681e(b) *if such information is received via accuracy-assuring procedures, and because there are no allegations in the record that the CRA Defendants' procedures were unreasonable.*" *Id.* at *17-18 (emphasis added). In contrast, Plaintiff *does* allege in the FAC and PSAC that EWS' procedures were unreasonable, and argues that parroting alone is not an "accuracy-assuring procedure." *Serfess v. Equifax Credit Info. Servs.*, 2014 U.S. Dist. LEXIS 120138 (D.N.J. Aug. 28, 2014), involved a *summary judgment* motion on which the court found the CRA's reliance on information provided by a bank reasonable because the *pro se* plaintiff did not produce evidence to show otherwise. Similarly, in arguing that courts may dismiss allegations of reasonable procedures at the pleading stage, EWS cites cases where plaintiffs failed to allege *any* facts suggesting the CRA's procedures were unreasonable. *See* EWS Opp. p. 11 FN 4, citing *Ogbon v. Beneficial Credit Servs.*, 2011 U.S. Dist. LEXIS 11615, at *9 (S.D.N.Y. Feb. 1, 2011); *Nguyen v. Ridgewood Sav. Bank*, 2015 U.S. Dist. LEXIS 64301, at *33 (E.D.N.Y. May 15, 2015); *Eller v. Experian Info Sols., Inc.*, 2009 U.S. Dist. LEXIS 74583, at *7-8 (D. Colo. Aug. 20, 2009) (*pro se* complaint was "comprised nearly entirely of bald conclusions of law and … almost entirely free of any actual averments of fact"). EWS even argues that *Jackson v. Warning*, 2016 U.S. Dist. LEXIS 172589 (D. Md. Dec. 13, 2016), is "particularly on point" despite the fact that the *pro se* plaintiff provided "absolutely no discussion of the ways that Defendants did not seek to ensure that their information was accurate, let alone whether what Defendants did or did not do was reasonable" and "failed to plausibly assert any specific allegation of unreasonableness." *Id.* at *15. *McNamara v. Hireright Sols., Inc.*, 2014 U.S. Dist. LEXIS 11056 (N.D. Ill. Jan. 29, 2014), is also highly distinguishable: The court found CRA procedures reasonable where a report was consistent with an underlying court record, *id.* at *21-22, though no such record exists or was relied on here.

11

Plaintiff alleges that the potential – and in her case, actual – harm from being reported inaccurately as having committed fraud includes being blocked, or at least severely hindered, from opening a bank account. FAC/PSAC ¶¶ 36, 53-56, 67-68, 72, 90, 161-62; FAC ¶¶ 170-71; PSAC ¶¶ 210-11. (She also alleges that EWS is well aware of this potential harm. FAC ¶¶ 167-68; PSAC ¶¶ 206, 208.) EWS' argument that parroting equals accuracy implies that EWS has but one procedure with which it purports to comply with § 1681e(b) – parroting – and that its policies do not require, or even allow for, any enhancements to that procedure according to the degree of potential harm that could result from inaccurate reporting. For EWS, parroting alone is sufficient when it comes to reporting someone as being 30 days late on a payment, and it is likewise sufficient when it comes to reporting someone as having committed fraud.

Plaintiff is hardly suggesting, as EWS would have the Court believe, the only possible "reasonable procedure" is "to conduct manual review of all the items" EWS receives;[12] there is a lot of ground between simply parroting and manually review of each piece of information.[13] At any rate, the PSAC contains sufficient factual allegations to state a plausible claim that EWS did not follow reasonable procedures, and leave to amend should be granted accordingly.

Because Plaintiff's PSAC states a claim under § 1681(e)(b), her amendment is not futile, and the Court should grant her Motion.

Date:   December 28, 2018
        New York, New York

---

[12] In response to Plaintiff's allegations that EWS simply parroted information from BANA and failed to take any independent steps to assess the accuracy of the information, *see* FAC/PSAC ¶¶ 164-66; PSAC ¶¶ 171-80, 192-94, 196-97, EWS replies that "courts have outright 'rejected the contention that CRAs are required to conduct manual reviews of all the items that they receive before including them in a consumer's credit file.'" EWS Opp. p. 12 (quoting *Frydman*, 2016 U.S. Dist. LEXIS 107139, at *40).

[13] For example, EWS' procedures could require further *automated* review before including such a potentially harmful statement in a file, require that a furnisher provide more information upfront, or prevent, under certain circumstances detected automatically, such a statement from being included in a file in the first place.

12

Respectfully submitted,

/s/ Eve Weissman
Eve Weissman
Susan Shin
New Economy Project
121 West 27th Street, # 804
New York, NY 10001
Telephone: (212) 680-5100
Facsimile: (212) 925-2092

Brian Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Telephone: (212) 248-7906
Facsimile: (212) 248-7908

*Attorneys for Plaintiff*