

**Aaron Weissberg**
Associate
Tel: (914) 872-7189

April 26, 2019

VIA ECF
Honorable Peggy Kuo
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Ruane v. Bank of America, N.A., et. al.*, 1:17-cv-03704 (PKC) (PK)

Dear Judge Kuo:

  We are the attorneys for defendant, Bank of America, N.A. ("BANA"), in this action. This letter constitutes BANA's motion for a protective order pursuant to Rule 26(c) from the FRCP 30(b)6 deposition notice by the plaintiff of a BANA witness (Exhibit 1) which was revised after a discussion with plaintiff's counsel (the revised notice Exhibit 2) but which is still very objectionable.

  This is a simple fact patter case involving the reporting of plaintiff's account to credit reporting agencies, namely, Chex and EWS, in connection with counterfeit checks that were admittedly deposited into plaintiff's account. From this paucity of facts, the plaintiff has generated something that can best be described as practically a frivolous series of deposition notices that are voluminous and ranging over topics designated by plaintiff that are clearly broad field with any rational relationship to this case or to the facts of the case.

  Chex Systems, Inc. ("Chex") also served a 30(b)6 notice (Exhibit 3). Since there are issues of duplicity that needs to be resolved before proceeding with the deposition noticed by Chex at least as far as plaintiff's counsel getting to question the BANA witnesses, until the court rules on this motion. Plaintiff's counsel will have the opportunity to question BANA witnesses at the Chex 30(b)6 depositions, and plaintiff should not have two opportunities to question the same BANA witnesses on the same topics that are covered by the Chex 30(b)6 deposition because it would be duplicative, unduly burdensome and improper to give plaintiff two bites at the apple. Likewise, Plaintiff I am sure does not want to appear for a deposition three separate times simply because each party serves a deposition notice, nor should BANA.

  BANA objects to topic numbers 5, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18, 20, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34 of the revised 30(b)6 deposition notice by plaintiff (Exhibit 2) as overbroad, improper, causing undue burden and expense, unreasonably cumulative, duplicative, irrelevant. Moreover, the topics are not relevant or proportional to the needs of the case and the burden and expense is outweighs any possible benefit given the issues involved. We conference this matter with plaintiff's counsel on March 25, 2019 and again on April 18, 2019 and I also had conversations with counsel for Chex as well related to these notices.

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Indiana • Kentucky
Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • New Jersey • New Orleans • New York • Orlando • Philadelphia • Phoenix • San Diego
San Francisco • Sarasota • Stamford • Virginia • Washington, DC • West Palm Beach • White Plains

wilsonelser.com

7618099v.1

Plaintiff's counsel has expressed the belief that they are entitled to cover the same topics and questions at both depositions even though they would be duplicative. To the extent that there is overlap between topics designated at the Chex 30(b)6 deposition and the plaintiff's 30(b)6 deposition notice BANA also objects to its witness having to be questioned twice on the same topics to the extent of any overlap.

The questions and BANA's objections are listed below.

5. BANA records, communications, policies, and procedures regarding the use of a signature bearing a close or exact resemblance to the signature of former U.S. President Barack Obama in connection with any BANA accounts.
    Objection:  This is totally irrelevant since it is undisputed that BANA detected the counterfeit checks and blocked the account. We notified plaintiff that BANA was aware of such a scam and provided emails reflecting its knowledge of the scam. BANA also caught the fraudulent check deposits. Documents and information pertaining to other customers is protected information under federal banking law and we are not required to provide plaintiff with account information as to other bank customers, and in fact are prohibited from doing so, which is totally irrelevant to plaintiff's case and this is not a class action suit. Plaintiff is not complaining that we failed to detect the counterfeit checks so prior knowledge is irrelevant. The sole issue is whether BANA had a reasonable basis for its conclusions that plaintiff was complicit in the fraud.

6. BANA's investigations, reinvestigations, and furnishing of information to any consumer reporting agency involving George Campbell, the plaintiff in the case *George Campbell v. Bank of America, N.A.*, No. 16-CV-9734 (AJN).
    Objection: This separate action was settled and is totally inappropriate and is subject to a confidentiality agreement. In addition, under federal privacy laws, BANA cannot discuss another customer's account. 15 U.S.C. 6801, *et seq.* The issues in that case are different and are not germane to this case. Moreover, this is not a class action suit and the facts of that case do not involve the plaintiff.

7. BANA's account history, records, and reports for all BANA accounts in Plaintiff's name, including but not limited to the opening and closing of each such account, the charges made and payments received on each such account, all activity on each such account, and all steps taken to investigate each such account or reinvestigate information furnished to any consumer reporting agency concerning each such account.
    Objection: Plaintiff's complaint is only suing in relation to the one account in which the counterfeit checks were deposited and the specific reporting relating to that account. Any prior or other account plaintiff had with BANA is irrelevant to the issues. The time frame is also overbroad and unduly burdensome to have a witness discussion transactions from opening to closing since she maintained an account since approximately 2004.

8. BANA's account history, records and reports for all BANA accounts reported to any consumer reporting agency regarding Plaintiff, including but not limited to the opening and closing of each such account, the charges made and payments received on each such

- 3 -

account, all activity on each such account, all notices sent to consumer reporting agencies concerning each such account, and all steps taken to investigate each such account or reinvestigate information furnished to any consumer reporting agency concerning each such account.

Objection: The topic is overbroad and unduly burdensome to have a witness discuss the entire account history and records for all of plaintiff accounts since inception to the same degree as topic 7 above.  Additionally, the language "including but not limited to" is overbroad when identifying a 30(b)(6) topic and defeats the purpose of giving notice of the topics to be discussed in the deposition. Id. Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 74, 2010 U.S. Dist. LEXIS 83987, *9-11.

9. BANA's data files, records and reports (including to third parties), regarding Plaintiff or using any of Plaintiff's personal identifiers.
Objection: This is totally irrelevant to the issues in this case, specifically whether BANA had a reasonable basis for its conclusions and reporting plaintiff's account the Chex and EWS.

12. BANA's policies and procedures for creating, storing, and retaining information, documents, and recordings concerning Plaintiff, including BANA's records and communications with Plaintiff, Chex, EWS, and any other parties concerning Plaintiff's accounts.
Objection: Policies and Procedures are highly confidential and concern security and proprietary information and software and also possess a security risk to the bank. Where and how BANA stores its information is irrelevant.  The issue is only whether BANA had a reasonable basis for reporting the account to credit reporting agencies in light of the counterfeit check deposits. This topic is overbroad and irrelevant and not limited in time.

13. All media and/or formats by which BANA reported information concerning Plaintiff to Chex and EWS.
Objection: This topic is equally objection, is overbroad and irrelevant.  There is no issue as to the content of the reporting or the method or media format.  This potentially could also be a security issue and would be unduly burdensome and is unnecessary for the facts of this case.

14. BANA's partial ownership of EWS.
Objection: BANA admits to partial ownership of EWS which is not an issue and is not in dispute.  Plaintiff has no right to confidential information relating to its business which has nothing to do with the reporting of her account.

15. The allegations and facts discussed in Plaintiff's Second Amended Complaint as filed in this lawsuit.
Objection: Plaintiff's second amended complaint is some 56 pages and nearly 500 paragraphs long including all kinds of alleged fact and details which BANA would not have knowledge about other than the issues involving the reporting of her account to Chex and EWS.  Since plaintiff's complaint is all encompassing, it would be unduly

- 4 -

burdensome and virtually impossible to prepare a witness because the topics would be unlimited.

16. BANA's policies and procedures for handling disputes received from consumers concerning (a) allegations of fraud, theft, attempted theft, or suspected fraud activity; (b) BANA's reporting of customers to consumer reporting agencies for suspected fraud activity and/or transacting (or attempting to transact) with an account in an unauthorized or prohibited manner; and (c) BANA's investigation or reinvestigation of such allegations and disputes.

    Objection: This scope is completely overbroad and unduly burdensome. This is not limited plaintiff's account and improperly seeks information as to other bank customers who are not parties and the bank is prohibited from disclosing such information. see 15 U.S.C. 6801, *et seq*. This is not a class action suit. Moreover, it would be unduly burdensome for the bank. The particular transaction affecting plaintiff's account were counterfeit check deposits and other type of fraud or unauthorized activities pertaining to credit cards for example are totally irrelevant. The only policies and procedures that are germane are the one pertaining to counterfeit check deposits to a bank account and the sold account scenario.

17. The number of investigations and reinvestigations of disputes handled by Adrianna Mendoza, Juliana Yao, and Michal Pankowski on the day or days that these individuals worked on Plaintiff's dispute(s) and/or file(s) and the amount of time Ms. Mendoza, Ms. Yao, and Mr. Pankowski spent on each such investigation and/or reinvestigation.

    Objection: Other investigations are irrelevant and out of scope. This is not a class action suit. Moreover, other customer information is protection under federal law.

18. BANA's policies and procedures for compliance with the Fair Credit Reporting Act, the Electronic Fund Transfer Act, and New York General Business Law § 349.
    Objection: This calls for conclusions of law and is improper.

20. BANA's Answer (including Amended Answers) and all defenses (including affirmative defenses) BANA contends apply to Plaintiff's claims.

    Objection: Such a demand is improper where it seeks BANA's legal theories of the case and involve legal conclusions of law. For example topics which seek testimony about "[a]ll factual matters which support a real defense to the action or support affirmative defenses []." seems to require that require a defendant to marshal the evidence it believe constitutes or supports any potential defense to the allegations in the Complaint is improper and should be stricken in its entirety. See Gov't Emples. Ins. Co. v. Lenex Servs., 2018 U.S. Dist. LEXIS 43584, *9, 2018 WL 1368024

23. BANA's agreements, settlements or consent orders with the Federal Trade Commission, the Consumer Financial Protection Bureau, and/or any State Attorney Generals regarding the investigation or reporting, to consumer reporting agencies, of customers for suspected fraud activity and/or transacting (or attempting to transact) with an account in an unauthorized or prohibited manner from January 1, 2013 to the present.

>Objection: This is irrelevant to plaintiff's claims and is overbroad and would be unduly burdensome. Also the scope deals with all kinds of unauthorized transactions. The issue is only concerning counterfeit check deposits to plaintiff's checking account and does not involve other parties. This is not a class action. The only issue is whether BANA had a reasonable basis for its reporting of plaintiff's account to Chex and EWS.

25. BANA's internal records of regulatory and legal complaints brought against BANA by or on behalf of BANA accountholders concerning BANA's failure to investigate or reinvestigate allegations of fraud, theft, attempted theft, or suspected fraud activity.
    1) Objection: This is unduly burdensome. We already responded that the Bank does not maintain a list of litigation matters that are in scope for the request, nor can it generate a list by searching the Bank's privileged litigation database. The Bank does not classify cases on that basis or compile data on that basis and does not have an automated mechanism to identify cases in which Plaintiffs allege that there was improper adverse reporting, or allegations of an improper investigation in response to adverse check reporting, other than a manual review of narrative fields for tens or hundreds of thousands of cases in the litigation database or an unreliable and inconclusive term search followed by manual review of results. The burden would be enormous. Additionally, the results of a term search would be inaccurate and unreliable and would also require a manual review and is not what the court ordered. Accordingly, we object to undertaking manual creation of such a list as unreasonably burdensome and irrelevant. This is not a class action.

26. The size, personnel, organization, budget, facilities, assets and operations of the department(s) that handled Plaintiff's disputes and BANA's investigations and/or reinvestigations concerning Plaintiff.
    >Objection: This is overbroad and irrelevant and would be unduly burdensome.

27. Identification and location information for any BANA employees who worked on or handled any disputes, investigations, and/or reinvestigations concerning Plaintiff.
    >Objection: This is also overbroad and unduly burdencome.

28. Salary and compensation, quotas and/or productivity targets, and training and evaluations of personnel who worked on or handled any disputes, investigations, and/or reinvestigations concerning Plaintiff.
    >Objection: This is totally improper and irrelevant and overbroad and would be an undue burden.

29. Scope of authority to investigate and correct errors concerning bank accounts and consumer reporting for personnel who worked on or handled any disputes, investigations, and/or reinvestigations concerning Plaintiff.
    >Objection: The topic is overboard and irrelevant.

30. Documents available to personnel who worked on or handled any disputes, investigations, and/or reinvestigations concerning Plaintiff.

<blockquote>Objection: The term documents is vague and overbroad and would create and undue burden. Also, there are documents that are totally irrelevant to plaitniff's case and the demand is overbroad.</blockquote>

31. Any BANA reports or documents concerning the accuracy, reliability, effectiveness, and legality of BANA's reporting, investigations, and reinvestigations concerning suspected fraud activity and/or transacting (or attempting to transact) with an account in an unauthorized or prohibited manner.
    <blockquote>Objection: This is improper because BANA has already responded that there is no process for review of accuracy. The legality aspect calls for a conclusion of law and is also improper. Also this requests information concerning remedial measures which is inadmissible and out of scope.</blockquote>

32. BANA policies or procedures to measure or evaluate BANA's reporting, investigations, and reinvestigations concerning suspected fraud activity and/or transacting (or attempting to transact) with an account in an unauthorized or prohibited manner.
    <blockquote>Objection: BANA has already produced its policies and procedures and this topic improperly calls for a conclusions of law.</blockquote>

33. BANA data breaches or security compromises that may have or did compromise Plaintiff's personal and/or account information.
    <blockquote>Objection: BANA has already indicated that plaintiff's account was not affected by any data breach at BANA. The phrasing "may have" in order to question BANA about any conceivable data breach is overbroad and irrelevant and unduly burdensome. We confirmed that whilst BANA was not involved in a data breach, between December 2013 to January 2014 plaintiff's debit card information was compromised at Target and Walmart/ Sam's Club, i.e. at the merchants'. As a result, plaintiff's debit card number was changed and she was reissued a new debit card on 2/5/14. This specific point of sale event was specific to plaintiff's old debit card information and did not cross over or impact in any way plaintiff's separate online banking access, passwords and challenge questions. Crucially, the risks associated with perpetrators obtaining a depositor's account information and making counterfeit cards relates only to whether or not the perpetrators can make purchases with a counterfeit card and not whether or not they would gain access to online banking, passwords and challenge questions.</blockquote>

34. Any act by any BANA employee(s) that may have or did compromise Plaintiff's personal and/or account information.
    <blockquote>Objection: This improperly calls for legal conclusions and is objectionable</blockquote>

Case law supporting the court's authority and discretion in forbidding and prescribing discovery and use of disclosure devices is cited below.

USCS Fed Rules Civ Proc R 26(c)
(c) Protective Orders.
(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted

to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(A) forbidding the disclosure or discovery;
(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery;
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
…

"Rule 26(c) provides that a court may, for good cause, issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). With regard to the "undue burden and expense" provision, Rule 26(c) operates in tandem with the proportionality limits set forth in Rule 26(b)(2). The text of Rule 26(c) is construed liberally to include a wide range of potential harms not explicitly listed. See Seattle Times Co. V. Rhinehart, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."); see also In re Zyprexa Litig., 474 F.Supp.2d 385, 413 (E.D.N.Y. 2007)." Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 73, 2010 U.S. Dist. LEXIS 83987, *6-7 (U.S.D.C. Connecticut 2010)

A portion of a party's 30(b)(6) notice may also be stricken if it is overbroad. "The purpose of designating matters for the 30(b)(6) deposition is to give the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure they are prepared for the deposition." Tri-State Hosp. Supply Corp., 226 F.R.D. at 125. Additionally, the language "including but not limited to" is overbroad when identifying a 30(b)(6) topic and defeats the purpose of giving notice of the topics to be discussed in the deposition. Id. Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 74, 2010 U.S. Dist. LEXIS 83987, *9-11

A Rule 30(b)(6) Notice is subject to limitations under Rule 26 which requires that the information sought not be unduly burdensome or duplicative. Courts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods. The court in Tri-State also suggested that since depositions are inherently "time-consuming and inefficient," they ought to "be productive and not simply an excuse to seek information that is already known." Tri-State Hosp. Supply Corp., 226 F.R.D. 118, 126 (D.D.C. 2005). Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition. See Gossar v. Soo Line R.R. Co., 2009 U.S. Dist. LEXIS 100931, *16-17 (S.D. Ind. Oct 27, 2009). Id.

Although a topic may be somewhat relevant to the claims and defenses in an action, if that relevance is outweighed by the undue burden a party would face if forced to prepare a 30(b)(6) witness to testify as to an unduly broad request, the request should be denied. City of New York v. FedEx Ground Package Sys., 2016 U.S. Dist. LEXIS 56553, *38

"[I]t is improper to use a Rule 30(b)(6) deposition to ascertain how a party intends to marshal the facts and support its legal theories. See SEC v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992); see also Liveperson, Inc. v. 24/7 Customer, Inc., No. 14 CV 1559, 2015 U.S. Dist. LEXIS

- 8 -

99782, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015); Nycomed US Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2009 U.S. Dist. LEXIS 97410, 2009 WL 346912, at *1 (E.D.N.Y. Oct. 21, 2009). The Court agrees with plaintiff that the first topic, as currently worded, is vague and seems to seek testimony on matters not at issue in this case—"all matters" within plaintiff's files, not even limited to files relating to defendants' claims. This is patently improper. If defendants are willing to accept GEICO's proposal to produce a witness with knowledge of the defendants and the facts underlying the Complaint, then the parties should proceed. Otherwise, the Court grants GEICO's motion for a protective Order and strikes defendants' first topic. Gov't Emples. Ins. Co. v. Lenex Servs., 2018 U.S. Dist. LEXIS 43584, *8-9, 2018 WL 1368024 (E.D.N.Y. 2018)

Request for governmental investigations into bad faith claims to show a pattern of misrepresenting the facts here or to falsely claim fraud in order to avoid paying over claims held to be "woefully inadequate to justify an unlimited fishing expedition into lawsuits brought by private parties alleging fraud or "bad insurance practices" against GEICO, going back indefinitely in time with no showing of relevance. Moreover, to the extent that the request seeks to inquire into any lawsuits where GEICO was the party "alleging fraud or theft," defendants have failed to explain why that information would be relevant here. GEICO's motion for a protective order as to Topic No. 14 is granted. Gov't Emples. Ins. Co. v. Lenex Servs., 2018 U.S. Dist. LEXIS 43584, *18-19, 2018 WL 1368024

Topics for examination which seek broad and intrusive discovery is unenforceable. Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2018 U.S. Dist. LEXIS 205600 (S.D.N.Y. 2018).

Rule 26(b)(2)(C), referenced in Rule 30, "requires a court to restrict discovery if "the discovery sought is unreasonably cumulative or duplicative," if "the party seeking discovery has had ample opportunity to obtain the information" sought, or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Arista Records LLC v. Lime Grp. LLC, No. 06 CV 5936, 2008 U.S. Dist. LEXIS 31269, 2008 WL 1752254, at *1 (S.D.N.Y. Apr. 16, 2008) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii)). Jibowu v. Target Corp., 2018 U.S. Dist. LEXIS 185745, *3-4, 2018 WL 5624145 (E.D.N.Y. 2018).

Plaintiff will have the opportunity to question BANA witnesses on the topics of the invesgtigation and reinvestigation covered by Chex's 30(b)6 notice and having BANA produce witnesses on a 30(b)6 notice by Plaintiff to the extend there is overlap of the issues, the Plaintiff should not have the opportunity to question a 30(b)6 witness twice on the same topics, which would be duplicative and cause unnecessary expenses and delay.

In evaluating any discovery dispute, the Court must determine whether the information sought is relevant and proportional to the needs of the case. Ice Cube Bldg., LLC v. Scottsdale Ins. Co., 2019 U.S. Dist. LEXIS 21929, *1 (U.S.D.C. of CT 2019).

Plaintiff also served a Rule 30(b)1 deposition notice of Tom Jordan an Assistant Vice President of BANA (Exhibit 4) who was merely designated as a potential custodian of business records and who will not be used as a witness and BANA seeks a protective order from his notice as well. Tom Jordan, is an AVP, Operations Consultant, of BANA and was originally mentioned as a potential witness in BANA's revised initial disclosures (Exhibit 5) merely as a

custodian of the business records and not based upon personal knowledge in the event BANA needed a custodian to offer documents in evidence. Tom Jordan was not involved in the investigation or re-investigation, has no personal knowledge in relation to plaintiff's account. Since BANA will have other witnesses any one of which can act as a custodian of records, his testimony is not necessary. Accordingly, we ask that plaintiff's deposition notice for Tom Jordan be stricken. If needed we can revise the initial disclosures to remove Tom Jordan's name. Tom Jordan acts as an investigator for litigated matters and is a liaison with outside legal counsel and such communications would be protected by attorney-client privilege and the work product doctrines as well.

Wherefore, it is respectfully requested that defendant's motion be denied in its entirety.

Respectfully submitted,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

/s/Aaron Weissberg
Aaron Weissberg

cc:     All counsel of record (via ECF)

7618099v.1